## T. W. HARRISON v. THE DES MOINES & FT. DODGE RAILWAY COMPANY, Appellant.

Real Property: COVENANT AGAINST INCUMBRANCE. While a highway is an easement and most easements are incumbrances, and while a highway might, under some conditions, be an incumbrance, yet the ordinary one running through land when sold, and which way is then known to be in use, is not a breach of the ordinary covenant against incumbrances usually found in deeds. An incumbrance is depreciative. A highway is usually appreciative of land values. *Van Wagener v. Van Nostrand*, 19 Iowa, 422; *Barlow v. McKinley*, 24 Iowa, 69, and *McGowen v. Myers*, 60 Iowa, 256, 14 N. W. Rep. 788, *distinguished.*

*Appeal from Palo Alto District Court.*—HON. GEORGE H. CARR, Judge.

THURSDAY, MAY 17, 1894.

THE defendant made to the plaintiff, on the eighteenth day of May, 1885, a deed to the northeast quarter of the northeast quarter of section 20, township 96, range 32 west, for a consideration of six hundred dollars. In the deed is a clause as follows: "And the Des Moines and Ft. Dodge Railroad Company doth warrant the title thereof to be perfect." The petition alleges that there is and was at the time the deed was executed, a public highway on two sides of the forty acre tract, because of which he is deprived of two acres of the land described in the deed, and that the amount so used by the highway is of the value of one hundred and thirty-five dollars; that at the time of the purchase he executed on the land a mortgage to secure a part of the purchase price; that since the execution of said mortgage he has made such payments thereon that, with the one hundred and thirty-five dollars—being the value of land used as a highway—the mortgage is fully paid; that he has requested defendant to enter satisfaction of said mortgage, which defendant has neglected to do; and he asks judgment for the statute penalty. There was a demurrer to the petition on various grounds, which the district court overruled, from which order the defendant appealed.—*Reversed.*

*Thos. S. Wright* and *George E. McCaughn* for appellant.

*T. W. Harrison* for appellee.

GRANGER, C. J. (*after stating the facts as above*).— We will assume, for the purposes of the case, that the covenant in the deed is against incumbrances, as well

as seizin.    In this way we come directly to the question
of whether or not a public highway known by the par-
ties to be in use at the time of the conveyance is an
incumbrance, so that its existence constitutes a breach
of the covenants of warranty.    In *Barlow v. McKinley*,
24 Iowa, 69, this court defined an "incumbrance" as
"a right in a third person in the land in question, to
the diminution of the value of the land, though con-
sistent with the passing of the fee by the deed of con-
veyance."    In the same case it was held that a right of
way for a railroad, though in existence, and known to
be so by the grantee, was a breach of the covenants of
warranty, and justified a recovery, following *Van Wag-
ner v. Van Nostrand*, 19 Iowa, 422, in which case it
was held that a building on the land, belonging to a
tenant, with a right to remove it, which right was
known to the grantee at the time of the purchase,
constituted a breach of the covenants against incum-
brance; and the rule was expressly stated that knowl-
edge on the part of the grantee of the incumbrance
did not defeat a right of recovery.    The holding is
followed in *McGowen v. Myers*, 60 Iowa, 256, 14 N.
W. Rep. 788, wherein an easement for a certain stair-
way was held to be an incumbrance against covenants
of warranty.    It will be observed that we are to meet a
delicate question, and also one of great and very gen-
eral importance to all parts of the state, from the fact
that conveyances of land are generally with covenants
against incumbrances, and very few of the number,
which is immense, contain exceptions as to public high-
ways.    If the rule is to obtain in this state that such
highways are incumbrances against covenants of war-
ranty, the effect will be to create almost numberless
liabilities where none were thought to exist; for, with
few exceptions, if any, conveyances have been made
without an apprehension of such a rule, by either of
the parties; and, as has been said in other states that

have denied the rule, it "would produce a crop of litigation   *   *   *   that would be almost interminable." Such considerations should not influence us to override an established rule of law, and to deny to any party a vested right; but they are important where a rule of law for the state is to be settled upon authority, and is so doubtful that parties acquiring rights may have done so under mistaken apprehensions of what the rule should be.   It is conceded that the authorities are not uniform on the question.   In *Prichard v. Atkinson*, 3 N. H. 335; *Kellogg v. Ingersoll*, 2 Mass. 97; *Haynes v. Young*, 36 Me. 557; and *Burk v. Hill*, 48 Ind. 52, it is held that such highways are incumbrances and a breach of such covenants.   In *Desverges v. Willis*, 56 Ga. 515; *Whitbeck v. Cook*, 15 Johns. 482; *Peterson v. Arthurs*, 9 Watts, 152; and *Memmert v. McKeen*, 4 Atl. Rep. (Pa. Sup.) 542, the opposite rule is held.   Both lines of authorities have support from rulings on kindred questions, and nothing less can be said, on authority, than that the question is one of grave doubt.   It should be said that some of the authorities cited against the rule that such an incumbrance constitutes a breach, base the conclusion on a broader doctrine than that of the rule applying simply to public highways, and hold that it applies to other easements, where they are open, notorious, and are, or may be presumed to have been, known to the vendee when the purchase was made; as in the case of a right of way for a railroad, when the road was in operation, and the easement created by it known to the grantee.   In view of the rule adopted in this state—that knowledge of the easement will not exclude it from the operations of the warranty—if we are to make a public highway an exception to the rule, it must be on other grounds, or at least the conclusion should be aided by other reasons.

Appellee contends, with much earnestness, that the highway in question is an easement, and that such an

easement is at all times an incumbrance, and in such sense "as to constitute a breach of covenants against incumbrances." It is to the latter branch of the proposition that we direct our attention. Is a public highway, in legal contemplation, an incumbrance? An "incumbrance" is defined to be "a burden upon land depreciative of its value, such as a lien, easement, or servitude, which, though adverse to the interest of the landowner, does not conflict with his conveyance of the land in fee." 10 Am. and Eng. Encyclopedia of Law, 361; 2 Greenl. Ev., section 242; *Chipman v. Kimball,* 7 Neb. 399; *Carter v. Denman,* 23 N. J. Law, 260. In *Prescott v. Freeman,* 4 Mass. 627, the foregoing definition is given in substance, and it is there said: "It is a weight on land, which must lessen the value of it." It will perhaps be well for us to treat these definitions as not casting the burden on a grantee to show affirmatively, in addition to the easement, that it is an incumbrance, in the sense of its being depreciative of the value of the land, and, instead, to give him the advantage of what the law will assume from the existence of an easement.

In all cases to which we are cited, barring those which we cite as sustaining the rule of appellee, easements have been held to be incumbrances because of rights in third persons, either natural or artificial. In the definition stated in *Barlow v. McKinley, supra,* it is said to be "a right in third persons, * * * to the diminution of the value of the land;" and the thought pervades nearly the entire course of authority on the subject. It is generally, if not always, treated as a right adverse to the interests of the owner of the soil, in consequence of which he sustains an injury. This is clearly shown by the ever present thought that the incumbrance is depreciative of the value of the land. In general, easements are of such nature that they become incumbrances, in the sense that they are a

burden or detriment to the servient estate; because there is nothing in their nature from which the law will presume that they were created in the interest, or for the betterment, of the estate.    It is in this view that it has sometimes been said that all easements are incumbrances, and this, as we think, has led, in some cases, to the statement of a broader rule than either public or private interests demand.    No easement should be regarded as an incumbrance to an estate, which is essential to its enjoyment, and by which its value is presumably enhanced.    Nothing in the record indicates that the highways in question do not bear the relation to the land conveyed to the plaintiff that public highways generally do to agricultural lands; and we have no hesitancy in saying that public highways are not depreciative, but, on the contrary, they are highly appreciative, of the value of the lands on which they constitute an easement, and are a means without which such lands are not available for use, nor sought after in the markets.    The network of highways over the state is the means by which the owners of lands are enabled to reach the churches, schools, and markets of their respective communities; and, when the owner of a tract of land is disconnected from this system, he becomes a petitioner to the public, and asks that such an easement be created, and his lands be made servient thereto.    By this system of highways the landed estates become mutually servient, and in such a way that the easements are mutually advantageous, and the respective land values enhanced thereby.    Such an easement is not an incumbrance.    If the rule of appellant's contention were to be announced, of the multitude that would seek a recovery because of conditions broken in their deeds of conveyance, probably not a score—if, indeed, one—could be found who would have made the purchase without the easement of which he would complain, or the assurance that one could be

established.   It  seems demonstrable that  the mere ex-
istence of  a  public nighway is not an  incumbrance  to
land.   It is probably true that sucn highways might be
made an incumbrance, put that is not the question
with which we are to deal.

To our minds, the known conditions, of which
judicial  notice  is  taken,  lead  to  the  conclusion that
public  highways  are so  far essential to the usual and
ordinary use and occupancy of land, and so far consti-
tute an inducement to the purchase of the same, as that
they are not incumbrances, so as to constitute a breach
of the usual covenants of warranty.   So universal has
been the belief that they are not such incumbrances,
and to such an extent has the belief been carried into
the exchange of lands in the state, that a contrary rule
would be violative of the mutual understandings of par-
ties to such transactions.   In *Whitbeck v. Cook, supra*,
it is said:   "It must strike the mind with surprise that
a person who purchases a farm, through which a  pub-
lic road runs at the time of  the purchase, and had so
run long before, who must be presumed to have known
of the existence of the road, and  who chooses to· have
it included in the  purchase, shall turn  to  his grantor,
and complain that the  general covenants in  the  deed
have been broken by the existence of what he saw when
he purchased, and what must have enhanced the value
of his farm.   It is hazarding little to say that such an
attempt is unjust and inequitable, and contrary to the
understanding of both purchasers and vendors.   If it
could succeed, a floodgate of litigation would be open-
ed, and for many years to come this kind of action
would abound.   These are serious considerations; and
this court ought, if it can, consistently with law, to
check the attempt in the bud."   If it is said that in
one particular the language of the quotation is not in
harmony with the holdings of this court as to other
easements, the language in other particulars is signifi-

cant and apt. In *Butler v. Gale*, 27 Vt. 739, the learned Chief Justice REDFIELD, in giving his adherence to the doctrine that a public highway is an incumbrance, so as to constitute a breach of the usual understanding of parties, to such an extent that a court of equity would relieve a vendor from the consequences of the rule, after announcing the technical rule of liability under the law, adds: "Ordinarily a court of equity would *readily suppose* that the incumbrance of an existing highway, or a railway, or any other known and notorious right of a similar character, as a right to draw water from a spring, exercised by another at the time of the conveyance, could not have been intended to be indemnified against, and therefore should have been excepted from the operation of the covenant, and would, no doubt, require the parties to so treat the deed." In another part of the opinion he further treats of the confusion of remedies, as between law and equity, by which the actual rights of the parties should be preserved, and characterizes such a claim for damages, in a law proceeding, as one for "a mere technical breach, which the parties must have understood and could not really have intended to indemnify against, *with the dry law of the case.*" We italicize the words, as language of the learned jurist designed to indicate a rule of law not tempered with justice, and hence, in our opinion, without merit; and before such a rule should obtain in this state, for no other reason than because it is "the dry law of the case," it should be an undoubted one, which, under the state of the authorities, can not be claimed for this. If it is said that the language of Chief Justice REDFIELD is as applicable to other easements known to the parties as to a public highway. We may say that we make the distinction on the line of what the law will presume to be an imcumbrance, in the sense that it is a damage to the estate made servient to the easement. Other easements to which our

attention has been called, or which we have been able to consider, are not such that the law will presume them as attaching to an estate, at the instance of the owner, and for its advantage. The consequences of a rule that would hold to a technical liability at law in such cases, and remand parties to proceedings in equity to reform the thousands of conveyances that would fall within its operation, can be better imagined than expressed; and we feel that the announcement of a rule of law decisive of the rights of parties, without such litigation, is correct in principle, and in accord with public and private interests. The cause is remanded to the district court, with instructions to sustain the demurrer to the petition. The judgment is REVERSED.