GEORGE R. BEACH, substituted administrator with the will annexed of Naomi C. E. Wright, deceased,

*v.*

THE HUDSON RIVER LAND COMPANY et al.

[Submitted September 24th, 1903. Decided October 31st, 1903. Filed January 20th, 1904.]

1. Under an agreement to convey land at a certain price per acre, the acreage to be determined by a survey, excluding the right of way of a railroad, the area of highways included in the described tract should be included, in determining the amount of the consideration.

2. The existence of a highway on land which one had agreed to convey free and clear of any encumbrance, and by a good and marketable title, would, at best, only entitle the grantee to a reduction from the purchase-money to the amount the existence of the highway reduced the value of the tract.

---

On bill to foreclose. On final hearing on bill, answer, cross-bill and replication.

This is a bill to foreclose a mortgage, dated December 30th, 1897, but actually executed and delivered about the 13th or 14th of January, 1898, given by John E. Alexander to DeGroot and Garrick, executors named in the will of Naomi C. E. Wright, deceased. Both of these mortgagees having died, Mr. George R. Beach was substituted in their place and filed the bill.

The equity of redemption in the property covered by the mortgage has passed from Mr. Alexander, the mortgagor, to the defendant herein.

The question is wholly as to the amount due upon the mortgage, the defendant claiming that there was at a certain time only $882.68 due, and the complainant claiming that there was at that time $2,224.20 due.

The bond and mortgage were given as part of the consideration money for a tract of land conveyed by the original executors to Mr. Alexander, by deed dated December 30th, 1897, but actually acknowledged and delivered about the 13th of January, 1898, coincident with the delivery of the deed.

It appears that the land was sold by the acre, in pursuance of a previous contract, dated April 30th, 1897, which required the conveyance to be free and clear of encumbrance. The precise quantity of land conveyed was not determined at the time the conveyance passed, and a clause was inserted in the bond and its recital in the mortgage as follows:

"And it is hereby agreed that if upon a particular survey of said farm it shall appear that the same (exclusive of the part owned by the Northern Railroad of New Jersey) contains an area of less than sixty acres, the principal of the said bond shall be reduced at the rate of six hundred dollars per acre for the amount of such deficiency of area. And that if said farm contains an area of more than sixty acres, the principal of the said bond shall be increased at the rate of six hundred dollars per acre for such excess of area."

At the same time, to wit, on the 13th of January, 1898, the parties to the original contract of sale—DeGroot and Garrick, executors, on the one part, and Edward A. Ryan, the vendee, on the other part—executed a short contract, as follows:

"The property described in the within [the original] contract has been conveyed to John E. Alexander by deed bearing date December 31st, 1897, and the said Alexander has given back .a purchase-money mortgage for $10,000 on a portion of the property.

"It is understood and agreed however that the giving of said deed and the giving back of said bond and mortgage is not to be considered a complete fulfillment of said contract, that the amount of land to be paid for is to be determined by a particular survey of the property satisfactory to both parties and that then the amount of the bond and mortgage given by said John E. Alexander to the parties of the first part in the above contract, is to be adjusted and the fulfillment of the contract is to be completed according to the terms contained in said contract, and it is understood that the terms and agreements contained in said contract are not to be changed in any way by any language contained in said mortgage or deed anything herein or therein in any wise to the contrary notwithstanding."

The material parts of that contract are as follows:

"*First.* The parties of the first part hereby grant unto the party of the second part the option to purchase a certain farm situated in the Borough of Ridgefield, and the Township of Ridgefield, containing about sixty acres of land, which was owned by Naomi C. E. Wright at the time of her death, bounded on the south by lands formerly owned by Samuel E. DeGroot, and conveyed by him to Sidney E. Morse, on the west by the Over Peck Creek, on the north by land formerly belonging to Samuel Hammond now deceased, and on the east by lands formerly belonging to John Edsall, at the price of six hundred ($600.00) dollars per acre, said option to expire on the first day of November, eighteen hundred and ninety-seven."

"*Fourth.* Upon making said payments in the manner aforesaid, the parties of the first part shall execute and deliver a deed of conveyance in fee simple to the party of the second part or to such person as he shall direct, *free and clear of any encumbrance,* which shall convey an indefeasible estate in fee simple to the grantee and his heirs, by a *good and marketable title.*"

The description of the land contained in the deed and mortgage was the result of an actual cotemporaneous survey of the premises, and was as follows:

"All that certain messuage, tract or parcel of land and premises, hereinafter particularly described, situate, lying and being in the Borough and Township of Ridgefield, in the county of Bergen and State of New Jersey at what was formerly known as the English Neighborhood, being the farm of which Naomi C. E. Wright, deceased, died seized. Beginning at the southwesterly corner of the land form-

erly of Cornelius Bogert, and later of John Edsall, from thence running northwesterly along the land formerly of John Day, now of Sidney E. Morse, and land now of late Samuel E. DeGroot, sixty-six hundred and forty-six and twenty hundredths (6646.20) feet, more or less, to Overpeck Creek; thence upstream of said creek to the line of land late of Samuel Hammond, deceased, formerly of the heirs of Jacob Edsall, deceased, containing in breadth at right angles across one hundred and ninety-eight (198) feet, more or less; thence a southeasterly course along the said line of land late of Samuel Hammond, deceased, eighteen hundred forty-eight (1848) feet, more or less, to the middle of the road now known as Grand Avenue; thence a northeasterly course, through the middle of said road, to the line of land late of Samuel Hammond, deceased; formerly of the heirs of Jacob Edsall, deceased, containing in breadth at right angles across one hundred and ninety-eight (198) feet, more or less; thence in a southeasterly course, along the true line of land late of Samuel Hammond, deceased, formerly of the heirs of Jacob Edsall, deceased, fifty five hundred ninety six and eight tenths (5596.08) feet, to the above mentioned Bogert's line; thence a southwesterly course, along said land formerly of Bogert, and later of John Edsall, to the place of beginning. Containing sixty (60) acres, more or less. Bounded northerly by land late of Samuel Hammond, deceased; easterly by land formerly of Cornelius Bogert, and later of John Edsall; southerly by land formerly by John Day and now or late of Sidney E. Morse, and by land now or late of Samuel E. DeGroot; westerly by Overpeck Creek.

"Excepting out of the above, the land now owned and occupied by the Northern Railroad Company of New Jersey as a right of way for their railroad."

There is no dispute as to the location of this land nor as to the quantity of land contained therein, after excepting thereout the amount previously conveyed to the Northern railroad of New Jersey. The quantity is agreed, by counsel, to be fifty-seven acres and eight thousand seven hundred and forty-eight ten thousandths of an acre.

The defence set up by the defendant is that there should be deducted from that the amount included within the lines of three highways which cross the tract at nearly right angles, viz., Grand avenue, Broad avenue and Bergen boulevard.

The tract is extremely narrow and long, being one mile and one-quarter in length and four hundred feet in width for the greater part of its length, and one hundred and ninety-eight feet in width for the remainder, with a jog or offset representing the difference in width at the point where Grand avenue crosses.

The amount contained within the limits of the three streets above mentioned is two acres and two hundred and thirty-seven thousandths of an acre.

Just before the date of the conveyance the property had been surveyed by two different surveys—Mr. Serviss, on behalf of the executors of Wright, and Mr. Williams, on behalf of Mr. Alexander, or his representative—and their computation of areas did not entirely agree.

At or before the hearing of this cause the survey was made by a third surveyor, whose result, as above stated, was adopted by the parties and their counsel in argument.

The only dispute, then, between the parties is as to whether the amount included in the highway should be counted as part of the land to be paid for.

The negotiations and preliminary contract were had between the executors and a Mr. Edward H. Ryan, a counselor-at-law of New York City, who was in fact the actual party to the contract. The conveyance to Alexander was made at his request.

On the 22d of October, nine days before the expiration of the option contained in the contract, the parties entered into a further agreement, which seems to have the effect, if the terms were kept, of extending the option for two years. Be that as it may, at the request of Ryan the conveyance was actually prepared, in December, 1897, and delivered in January, 1898, as above stated.

While it was being prepared, and before it was actually prepared, the two surveys above mentioned were made, and the question as to whether the consideration-money should be computed upon the whole contents of the survey or only upon that part not included in the highways, was raised by Mr. Ryan.

In a letter written by Judge Garrick to Mr. Ryan, dated January 10th, 1898, three days before the deed and mortgage were exchanged, is found this clause:

"In regard to deducting the roads Mr. DeGroot says that 'it has always been customary in conveying farms or country property to include the roads to the middle thereof to ascertain the area. Of course the portion occupied by the railroad is to be deducted."

Beach *v.* Hudson River Land Co.

And in a reply by Mr. Ryan to Judge Garrick, dated January 11th, is found this clause:

"Referring to Mr. DeGroot's opinion, that it is or was the custom to measure the streets when farm property was sold, I think Mr. DeGroot will not claim that there was ever any custom that could change a written contract with me. If you were to charge me with the streets, you certainly could not give me a good and marketable title to the streets. I think when Mr. DeGroot reads the contract, that he will decide that the agreement that you and I made regarding the matter, when I saw you last, was legal and just, and the only correct interpretation of the matter."

In a letter of February 5th, 1898, from Judge Garrick to Mr. Ryan, is found this clause:

"I have received the survey from Mr. Serviss. While the lines and courses do not agree exactly with those of Mr. Williams, the acreage given is about the same or a trifle more. I will have a copy made and send it to you."

And on February 16th Mr. Ryan writes to Judge Garrick, and uses this language:

"I wish you would also let Mr. Mark make a copy of the survey made by your surveyor, as I would like to know exactly what acreage he claims there is in the property. If these two surveyors cannot agree, it will be necessary to have the property surveyed again by a third party."

And again, on the 24th of February, he writes to Judge Garrick, and in that letter he uses the following language:

"Of course, your surveyor may be right; I do not know anything about it. I have asked Mr. Williams to resurvey the property. I did so as soon as I received your survey. He was ill at the time, and his clerk said he would attend to it as soon as he was able. I have heard nothing from him yet. Of course, if the amount that you require should be more than would be actually your due, when a final settlement was obtained, you could pay it back; though I would prefer to pay only what I ought to pay. Just as soon as I can find a little spare time, I will arrange for a meeting with you, and we will go over the whole matter; and I think that we will be able to agree upon a settlement.

"I have never sued anybody, I have never been sued, and I have never arbitrated any matter, and I desire only what is right in this case; and I believe that you and I can settle the whole question without calling in any third party."

And again, April 5th, 1898, Mr. Ryan writes to Judge Garrick, using this language:

"I know that your surveyor made a mistake as to the width of the Bergen County Boulevard; it may be the only mistake that he has made in his life; but the fact that he did make a mistake there would incline me to the belief that Mr. Williams was quite as likely to be right as the other man.

"Of course I know there was not two acres difference in the amounts found by these men, and I use these numbers just to illustrate what I mean. Again, how would it do for me to pay for one half of the streets. Now, I certainly believe, that under our contract, that I ought not to pay for one foot of the present public highway. I believe that I am under no obligation whatever to pay for any part of the highway. It would make no difference what the custom was in conveying farm land, for, while we describe this property as 'a certain farm,' it would be easy enough to show that it was not purchased for farm purposes, and that no property is worth the price that I paid for this property for farm purposes; and the release which was provided for; it was an evidence that it was intended to be used as lots, and not as a farm; and in addition to that, the clause in the contract which requires you to give me a good and marketable and indefeasible title to the property that I am to pay for, would certainly exclude the streets. However, I am a man of peace; and if we can reach a settlement that does not require me to do myself too great an injustice, I prefer to settle."

On the 8th of March, 1898, for a large cash payment, the executors released to Mr. Alexander a portion of the premises by the following description:

"Beginning at a point in the middle of Grand Avenue, distant at right angles two hundred and fifty (250) feet northeasterly from the southerly boundary line of the farm formerly belonging to Naomi C. E. Wright now deceased and which was conveyed by the said party of the first part to John E. Alexander by deed bearing date December thirtieth, eighteen hundred and ninety-seven; thence running southeasterly and parallel or nearly so with said southerly boundary line and distant at right angles two hundred and fifty (250) feet northeasterly therefrom five thousand and fifty one (5051) feet more or less to the middle of the Bergen Boulevard; thence northeasterly along the middle of said Boulevard one hundred and fifty feet more or less to the line of land of Samuel Hammond deceased, formerly of the heirs of Jacob Edsall deceased, thence northwesterly along the true line of land late of Samuel Hammond deceased, formerly of the heirs of Jacob Edsall deceased five thousand and twenty-nine (5029) feet more or less to the middle of Grand Avenue, thence southwesterly along the middle of Grand avenue to the point or place of beginning."

Beach *v.* Hudson River Land Co.

On the 23d of May, 1898, Mr. Ryan wrote to Judge Garrick, asking for a settlement and threatening suit.

*Mr. Otto Crouse* and *Mr. Randolph Perkins,* for the complainant.

*Mr. George G. Tennant,* for the defendant.

PITNEY, V. C.

There was no assertion or contention, or room for any, that any fraud or misrepresentation was practiced upon Ryan in the making of his contract, or that he was not fully acquainted with the premises and the existence of the highways thereon. Moreover, he is a member of the bar of New York and presumed to be acquainted with the law of the land. The contract of sale was therefore a fair one. If he did not intend at the time he entered into it to pay for that part of the land included within the highways, he should have made provision for it at that time. The general description found in the contract includes the highways. The description by metes and bounds found in the actual conveyance is in precise accord with the general description contained in the contract. On all these points there is no dispute, so that if the case stops just there, it seems to me, there would be no room for doubt. But it does not stop there. It appears, by the letter of Judge Garrick of 10th of January, 1898, prior to the delivery of the deed and of the mortgage, that the question of how the acreage was to be arrived at, and whether the amount of acreage included within the limits of the highways was to be counted and paid for, was raised between Mr. Ryan and Judge Garrick, and Judge Garrick stated in that letter, in effect, that he should insist that the amount in the highways should be included and paid for. Now, in that state of affairs the bond and mortgage are executed, and by their explicit terms, as above set forth, the quantity of land in the limits of the survey, "exclusive of the part owned by the Northern Railroad of New Jersey," should be the basis of the consideration-money. The language states, with the utmost

precision, just what part of the lands included within the survey should be counted in making up the consideration-money. It seems to me that it is impossible to escape this result.

The provision for the exclusion of the amount occupied by the Northern Railroad of New Jersey is conclusive evidence that the land included within the limits of the highways should be included. The maxim, *inclusio unius exclusio alterius,* applies.

In answer to this, the counsel for defendants rely upon the little contract of January 13th, made at the time the deed and mortgage were severally delivered, and it may here be observed that the deed of conveyance contains no covenants whatever.

Now, I am unable to find anything in that little contract which alters the situation as it is found in the deed and conveyance, except that it may reserve to Mr. Ryan the right to sue the executors for a breach of contract in not conveying all of the land free and clear of encumbrance, and that right I shall assume included the right to set off such damages against the amount due on the mortgage upon a final accounting. There is nothing in the contract just named which justifies or in any way sustains the notion that in computing the area of the land contained within the description for the purpose of ascertaining the consideration-money, any allowance was to be made for the amount included in the highways. Nothing in the original contract supports that notion, and nothing in the conveyance or mortgage supports it. It simply says that the amount of the bond and mortgage is to be adjusted and the fulfillment of the contract is to be completed according to the terms contained in said contract. That has been done with great care and accuracy. By the terms of the contract, the highways are undoubtedly included.

It seems to me that the point of view most favorable to the defendant from which to consider the effect of the contract of January 13th is to suppose the complainant was here now with a bill for the specific performance of the original contract of 1897, and I will so consider it.

The universal practice is, and always has been, in New Jer-

sey, to include in·a conveyance, without excepting or noting the same, all highways which cross or lie upon the land conveyed, and where it does not appear by the description that a highway·is included the presumption is that the·title goes to the centre of any highway adjoining the premises conveyed.

I am not aware of any case in New Jersey·where a considerable tract of land, like the present, has been sold by the acre; that in the absence of a specific provision any deduction has ever been made in the contract price, either on specific performance or on foreclosure of a purchase-money mortgage, on account of the existence of highways within the limits of the survey, where those highways were open and visible to the eye.

I am not aware that it has ever been decided in New Jersey that the existence of a highway upon a tract of land, and included within the metes and bounds thereof, amounts to a breach of covenant against encumbrances. It has been held in Pennsylvania that it does not, and I believe, also, in New York. *Rawle Cov. Tit. (2d ed.) 141–147 (1854)*. And, certainly, the sentiment of the profession in this state is·to that effect, else there would have been innumerable actions for damages for breach of warranty on account of·the existence of highways on or across lands. The simple reason for this is that they are patent encumbrances which cannot be removed, and an action for damages on account of their existence would produce, in ninety-nine cases out of a.hundred, no more than nominal damages.

The cases referred to by counsel for·the defendant on shortage of acreage have no application here. There is·here no shortage of acreage nor any defect of title to any part of the premises, except, indeed, that conveyed to the railroad company. Title to the part covered by the streets is complete, subject, however, only to the encumbrance of the public highway.

The utmost that defendant could claim, under the most favorable aspect that could be taken of its case, would be that it was entitled to a reduction from the purchase-money for the amount which the encumbrance of the highway reduced the land in

value. No evidence was produced on that point, but it was well said by complainant, in his argument, that it is plain that the existence of the highways increases, rather than diminishes, the value of the property. A glance at the map shows that the taking away of any one of the three highways which cross the land would be a positive detriment to it for the purpose for which it was undoubtedly purchased, viz., the laying of it out in building lots, and the taking away of all the highways would well nigh ruin it for that purpose.

I will advise a decree according to complainant's contention.