88 N.J. Super. 441 (1965)
212 A.2d 674
OLD FALLS, INC., A CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
CHARLES F.H. JOHNSON, JR., AND DOROTHY I. JOHNSON, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued May 24, 1965.
Decided July 22, 1965.
*443 Before Judges KILKENNY, SULLIVAN and LEWIS.
Mr. Theodore J. Labrecque, Jr. argued the cause for appellant (Messrs. Parsons, Canzona, Blair & Warren, attorneys).
Mr. Ernest Fasano argued the cause for respondents (Messrs. Doremus, Russell, Fasano & Nicosia, attorneys; Mr. William L. Russell, Jr., of counsel).
The opinion of the court was delivered by LEWIS, J.A.D.
This matter involves litigation arising out of a real estate transaction. Plaintiff's action in the Superior Court, Law Division, for breach of warranties contained in a general warranty deed, was dismissed at the close of the presentation of its proofs. The present appeal followed.
We shall narrate only such factual evidence as appears to us to be necessary to resolve the critical legal issues under consideration.
On November 29, 1957 plaintiff Old Falls, Inc. (hereinafter sometimes Old Falls) purchased from defendants Charles F.H. Johnson, Jr. and his wife (herein Johnsons), for a consideration of $45,000, a tract of "heavily wooded rural" land, approximately 38 acres, fronting Water Street in the Borough of New Shrewsbury, New Jersey. The instrument of conveyance contained the usual warranties and covenants, including:
"That the grantee shall have quiet possession of the said land free from all incumbrances:"
and
"That they [the grantors] will warrant generally the property hereby conveyed, except as hereinabove set forth."
The exception referred to, in pertinent part, reads:
"SUBJECT to rights, public and private, in roads, streets or avenues abutting the hereinabove described premises."
*444 It is convincingly clear from the proofs that at the time of settlement neither the grantors nor the grantee were aware of or understood that there existed any public right-of-way or easement across the subject premises. It is likewise clear that there is in fact a sand road, single-car width, winding lengthwise across the westerly side of the property, extending from Water Street southward for the greater length of the tract to a point at the southerly end thereof, where said road forks in two directions, the southwest prong leading to the adjacent farm lands of Paula I. Osterman and the southeast prong leading to the adjacent farm lands of Anthony and Nora Monzo. Both branches of the road apparently extend to Murphy Road abutting the far side of said farms to the south. It is not contended that the right-of-way through the woods is an absolutely necessary means of ingress and egress to their farm lands.
The surveys produced at the time of settlement did not disclose the delineation of any roads, nor indicate the existence of any rights-of-way crossing the subject lands. There has never been a legal layout or dedication of the road; no filed plans reveal its existence, and the municipality has never repaired it or assumed responsibility for its maintenance.
Within a few months after closing title, and when plaintiff learned that the travelway through its woodlands was being traversed by Monzo and Osterman as a means of access to their respective farms, the company notified them to cease and desist from using the road. They refused to do so.
In the latter part of 1961 Old Falls filed a complaint in the Superior Court, Law Division, against the Johnsons, alleging that the Chancery Division, in an injunction proceeding instituted by it to prevent trespassing by the adjoining neighbors, had entered a final judgment, on March 10, 1961, wherein it determined that plaintiff "could not restrain or impede the said Paula I. Osterman and Anthony Monzo, or other members of the public from passing over or crossing the property of the plaintiff." It was further alleged that Old Falls purchased the subject property for subdividing and developing *445 and, by virtue of the existing public road across its land, it was rendered worthless for the use for which it was purchased and it has greatly depreciated in value. The complaint charged that the Johnsons violated the several covenants in the deed by which they conveyed the property and demanded damages and costs of suit. A trial of the cause by jury was requested.
Defendants by their answer asserted separate defenses and specifically claimed, inter alia, that the subject premises were "not encumbered by a public road or otherwise."
The trial court determined that the issues of liability and damages were severable. The liability question was considered first. It was tried on the theory that a public right-of-way easement existed across the lands described in the Johnson-Old Falls deed, constituting an encumbrance in violation of the grantors' covenant of possession free of encumbrances, and that plaintiff has been damaged as a result thereof.
After proffering the deed, certain surveys and documentary exhibits, plaintiff's counsel offered to place in evidence a certified copy of the aforesaid judgment of the Chancery Division, together with a copy of the judicial findings of fact and conclusions of law in that action, as binding upon defendants as to the location and the existence of the public road encumbering the lands which were sold to plaintiff. The trial court rejected the offer on the grounds that the Johnsons were not parties defendant in the Chancery proceedings and, accordingly, were not bound by the resultant judgment, notwithstanding their cooperation with plaintiff in its unsuccessful attempt to defeat the claim of the defendants therein that the general public had a prescriptive right of user.
Neither at that juncture of the trial, nor at any time before the Law Division, did plaintiff contend that the deed covenant for quiet enjoyment was breached by a nonpublic prescriptive use. The ensuing proofs of Old Falls were directed toward establishing a public road encumbrance upon its lands. Old Falls allegedly produced the same testimonial evidence upon which the Chancery Division had previously *446 found a public right-of-way to exist. Hostile witnesses were called, and their testimony was adduced to prove that the travelway through the company's woodlands was continuously used by the public for more than 20 years and that it was in fact apparent and visible.
Monzo was a key witness. After testifying as to the location of his property, south of the wooded acreage purchased by plaintiff, he said that the sand road through the woods "started during the wagon days," and he had used it since 1925. Also, there were three mail boxes at the entrance of the road at Water Street. The following excerpts from his testimony are particularly noteworthy:

Direct Examination
"Q. Since 1925 has that road ever been shut off to your use?
A. There has been an attempt to shut it off.
Q. What do you mean an attempt was made to shut it off?
A. They have been putting barricades up.
Q. What if anything did you do to the barricades?
A. I tore them down.
Q. How many times did that happen?
A. Oh, three or four times."

Cross-Examination
"Q. You stated the road was barricaded?
A. Yes.
Q. Several times?
A. Yes."

Recross Examination
"Q. Did you agree with Mrs. Henderson [former owner of Johnsons' property] to close the road one day a year?
A. I agreed with Mr. McCue.
Q. For Mrs. Henderson?
A. That's right.
Q. That was in 1949, is that correct?
A. That's right.
Q. Thereafter was the road closed one day a year by Mrs. Henderson?
A. No, not Mrs. Henderson.
Q. By Mr. Johnson?
A. By Mr. Johnson.
*447 Q. By Mr. Johnson it was closed one day a year thereafter?
A. It did not stay closed one day. I told you I knocked the barriers down in twenty minutes. * * *
Q. Did you agree with Mr. McCue in behalf of Mrs. Henderson to close the road one day a year?
A. That's right."
Substantiation of the critical aspects of that testimony appears from two photographic exhibits admitted in evidence depicting a rough path or roadway through a thickly wooded area, with two heavy rails or barricades across the entire width of the road. One picture shows a sign, but the wording thereon is not legible from the photograph. The proofs do not reveal any other relevant details as to those exhibits.
Other users of the road who were summoned to give evidence for plaintiff were: Mrs. Mary G. Steinbach, Monzo's grantor, had been familiar with the property in 1942, but she had not passed through the woods in question for some eight or ten years; Allen E. Crawford, a local farmer, at one time raised pigs on the Monzo place, but he had last used the road four or five years ago; Ernest Hiltbrunner, the borough's superintendent of streets and sanitation, testified that he knew of the roadway through the Old Falls property and used it as a "short cut from Water Street to Murphy Road"  he had not traversed the premises for a couple of years, and he had never ordered any municipal maintenance of the road; John H. Cook, Jr., born in 1884, was a farmer in the area and he used the road to "gather pine needles" and "pick trailing arbutus and teaberries" in the horse and wagon days. He had not, however, been over the road for 20 years.
Additionally, plaintiff proffered the testimony of two of its representatives:
Joseph T. Grause, Esq., a "nominee" stockholder and officer, represented the company at the time of its land purchase from the Johnsons. He testified that at the time of settlement he did not have any knowledge of a public road across the premises in question, and that he first learned about such a claim "some few months subsequent to the closing." In advance *448 of settlement, he obtained a copy of a 1949 survey covering the Johnson property (formerly known as the Henderson farm), made by J.W. Seaman & Sons, professional engineers. That plan showed several tracts, representing 193.92 acres, principally located on the north side of Water Street; the 38-acre parcel of woodland sold to Old Falls is designated thereon as a major portion of tract No. 4, located south of Water Street. He testified that he advised Mr. Johnson that "a minor subdivision would be required in order to pass valid title." Accordingly, a survey of the subject property was obtained on September 30, 1957 from the same engineers, and it was approved by the planning board and the clerk of the Borough of New Shrewsbury. No roads or rights-of-way relating to the woodlands appear on either survey. We note, however, that on the 1949 survey farm roads are delineated across certain portions of the farmlands north of Water Street.
Henry F. Labrecque, a civil engineer and land surveyor, was one of the principal stockholders of Old Falls. He testified that he first knew of the roadway in dispute after settlement had been consummated and when he made a subdivision development survey of the property in March 1958; that he also learned at that time that there were numerous "other little paths through the woods." The proposed development plans which his company had prepared and which were admitted in evidence indicate a proposed 50-foot road that would run from Water Street to the "back property." He admitted, however, that two of the stockholders of plaintiff company had been over the premises prior to settlement. In substance, his testimony was to the effect that a public roadway, as now located along the westerly side of the premises, would reduce the number of available lots in the planned subdivision development of the property by 25%, and that unless the road was eliminated or relocated it would not be economically feasible to proceed with the development.
When plaintiff rested its case, defense counsel moved for a dismissal of the complaint primarily on the ground that a *449 public highway is not an encumbrance within the juridic concept of covenants against encumbrances. In granting the motion the trial court observed that, after the closing of title, it was discovered "there existed a roadway upon the said tract of land," and, in addition, that the plaintiff "proves that the roadway is apparent and visible and that it has been used for a very long time as a road; in fact in the argument against the motion, concedes that it is a public highway, or a public way." The legal authorities were then reviewed at length by the trial judge, who reached this conclusion:
"I am satisfied that the proofs presented do not establish the case in favor of the plaintiffs as a matter of law, because I think New Jersey  while only the former Court of Chancery has spoken  is in line with the prevailing rule throughout the country, that the existence of a public road across the premises does not constitute an encumbrance which would violate the covenant of quiet possession or the covenant against encumbrances."
On appeal to this court plaintiff argues two points, the last of which we shall consider first. It is contended that the trial court erred in holding that the defendants were not precluded by the Chancery Division judgment from challenging the public character of the questioned road or easement. We perceive no merit to that argument as plaintiff was not prejudiced by that ruling because the Law Division made an independent finding of fact to the same effect as the prior judgment. It is therefore unnecessary to consider here the issues of estoppel by judgment and res judicata. But we note, in passing, the comment of Chief Justice Hornblower in Morris v. Rowan, 17 N.J.L. 304 (Sup. Ct. 1839):
"If notice of the suit had been given to these defendants and they had either declined to interfere, or had unsuccessfully aided the plaintiff in his defence, it must be admitted, that they would not only, have been liable to costs; but would also have been concluded by the judgment of eviction." (at p. 307)
Accord, Chapman v. Holmes' Ex'rs, 10 N.J.L. 20 (Sup. Ct. 1828). The covenantee is bound to notify the covenantor of adverse suits, unless the court has jurisdiction of the covenantor. *450 Note, 7 Thompson on Real Property (Grimes 1962 replacement), § 3198, p. 361; 21 C.J.S. Covenants § 91, pp. 947-948. But see Board of Directors of Ajax, etc. v. First Nat. Bank of Princeton, 33 N.J. 456 (1960); United States Wire & Cable Corp. v. Ascher Corp., 34 N.J. 121 (1961). Additionally, it would appear that the issue in the former action was whether Monzo, Osterman and the public had a right to use the sand road. But whether that right-of-way at the time of the delivery of the Johnson-Old Falls deed was so used and was then open, notorious and known to be a public thoroughfare was not, so far as appears from the record, legitimately within the purview of that action, or essentially involved in its determination. See Hymes v. Esty, 116 N.Y. 501, 22 N.E. 1087, 1089 (Ct. App. 1889).
The major question that goes to the heart of the pending review is stated in plaintiff's brief in this fashion: "Is a road, judicially declared to be a public easement after the closing of title, across a heavily wooded tract of land an encumbrance for which damages will lie as a result of the breach of warranties in the deed?"
At the threshold of our discussion it should be recognized that there is a basic distinction between a covenant for quiet enjoyment and a covenant against encumbrances. The latter, like in praesenti covenants of seisin, are breached on the delivery of the deed, while the former requires eviction, actual or constructive, under a paramount title. On the subject of constructive eviction see, generally, Annotation, 172 A.L.R. 18 (1948), and the authorities therein collected.
"The covenant of warranty can never be treated as a covenant against encumbrances, for in that case, the encumbrances being in existence when the deed was made, the covenant would be broken at the time of the conveyance, and would become a mere right of action not assignable at law, and would not pass to the subsequent grantee." 7 Thompson, op. cit., § 3189, at p. 333; note also § 3196, at p. 352 et seq.
As stated in Tomes v. Thompson, 112 Conn. 190, 151 A. 531, 533, 72 A.L.R. 297 (Sup. Ct. Err. 1930), "A covenant *451 against incumbrances, if broken at all, is broken the instant the deed is given."
The general rule is that the existence of an easement is an encumbrance sufficient to breach a covenant against encumbrances. Kuhnen v. Parker, 56 N.J. Eq. 286, 287 (Ch. 1897); DeLong v. Spring Lake and Sea Girt Co., 65 N.J.L. 1, 6 (Sup. Ct. 1900); Propper v. Colson, 86 N.J. Eq. 399, 401 (E. & A. 1916); 3 American Law of Property, § 12.128, p. 462 (1952); see Wellmore Builders, Inc. v. Wannier, 49 N.J. Super. 456, 465 (App. Div. 1958). A common exception is an implied easement of "absolute necessity," which is predicated upon the strong public policy that no land may be made inaccessible and useless. Denman v. Mentz, 63 N.J. Eq. 613, 618 (Ch. 1902).
The authorities, however, are not in agreement as to whether the actuality of a public highway easement at the time of a conveyance constitutes a breach of the covenant against encumbrances in the deed. A majority of the jurisdictions support the proposition that where a public travel facility is known, apparent and visible it is not embraced within such a covenant. Thompson, in his commentaries on the modern law of real property, has declared:
"An asserted easement is a cloud on the title of the alleged servient estate, an action to quiet title will lie against it. And an easement generally is an encumbrance within the scope of a covenant against encumbrances. Under the majority rule, however, a public highway is excepted from this rule. There is, however, a strong minority view to the effect that an easement for a public highway breaches a covenant against encumbrances in warranty deeds, since the easement deprives the owner of the exclusive enjoyment to which he is entitled." 2 Thompson, op. cit., § 315, pp. 12-13
The primary reasons ascribed for the majority position are that a road or highway is ample notice of its physical existence, and such a dominant easement appreciates rather than deteriorates the value of the servient lands. Id., at p. 14. See also 6 Powell on Real Property, § 908, p. 263 (1958); 3 American Law of Property, supra, at p. 464. The subject is *452 extensively discussed, with an assemblage of authorities, in Annotation, "Covenant Against Encumbrances  Breach," 64 A.L.R. 1479 (1929).
Leading cases supportive of the majority view include Whitbeck v. Cook, 15 Johns. 482, 545, 8 Am. Dec. 272 (Sup. Ct. 1818); Huyck v. Andrews, 113 N.Y. 81, 20 N.E. 581, 3 L.R.A. 789 (Ct. App. 1889); Hymes v. Esty, supra; Patterson v. Arthurs, 9 Watts 152 (Pa. Sup. Ct. 1839); Memmert v. McKeen, 112 Pa. 315, 4 A. 542 (Sup. Ct. 1886); Sandum v. Johnson, 122 Minn. 368, 142 N.W. 878, 48 L.R.A., N.S., 619 (Sup. Ct. 1913). In Harrison v. Des Moines & Ft. D.R. Co., 91 Iowa 114, 58 N.W. 1081, 1082 (Sup. Ct. 1894), the court said: "No easement should be regarded as an encumbrance to an estate that is essential to its enjoyment, and by which its value is presumably enhanced." The logic and reasoning enunciated in Harrison were approvingly followed in Killen v. Funk, 83 Neb. 622, 120 N.W. 189 (Sup. Ct. 1908).
The courts of some states e contra espouse the hypothesis that a public highway is an encumbrance within the meaning of the usual covenants of a warranty deed because its very subsistence deprives the owner of that exclusive dominance over his land to which he is entitled. Decisions typifying this minority rule can be found in Kellogg v. Ingersoll, 2 Mass. 96 (Sup. Jud. Ct. 1806); Butler v. Gale, 27 Vt. 737 (Sup. Ct. 1855); Siegel v. Shaw, 337 Mass. 170, 148 N.E.2d 393 (Sup. Jud. Ct. 1958); Copeland v. McAdory, 100 Ala. 553, 13 So. 545 (Sup. Ct. 1893).
In New Jersey that precise issue has never been squarely resolved by a reported decision. The trial court sub judice placed substantial reliance upon the rationale of Vice-Chancellor Pitney in Beach v. Hudson River Land Co., 65 N.J. Eq. 426 (Ch. 1903), affirmed per curiam 68 N.J. Eq. 656 (E. & A. 1905), wherein the parties had entered into an agreement to convey lands free and clear of encumbrances, at a certain price per acre, the acreage to be determined by a survey. In holding that the existence of a highway on the *453 premises, at best, would only entitle the grantee to a proportionate reduction from the purchase money, it was said:
"I am not aware that it has ever been decided in New Jersey that the existence of a highway upon a tract of land, and included within the metes and bounds thereof, amounts to a breach of covenant against encumbrances. It has been held in Pennsylvania that it does not, and I believe, also, in New York. Rawle on Covenants of Title (2d Ed.) 1854, pp. 141-147. And certainly the sentiment of the profession in this state is to that effect, else there would have been innumerable actions for damages for breach of warranty on account of the existence of highways on or across lands. The simple reason for this is that they are patent encumbrances, which cannot be removed, and an action for damages on account of their existence would produce in ninety-nine cases out of a hundred no more than nominal damages. * * *
The utmost that defendant could claim, under the most favorable aspect that could be taken of its case, would be that it was entitled to a reduction from the purchase money for the amount which the encumbrance of the highway reduced the land in value. No evidence was produced on that point, but it was well said by complainant in his argument that it is plain that the existence of the highways increases, rather than diminishes, the value of the property." (65 N.J. Eq., at pp. 435-436)
On review, the Court of Errors and Appeals agreed with the vice-chancellor that the contract between the parties required that the highways should be included in computing the area of the land for the purpose of ascertaining the total amount of the consideration money, and then commented, "His [the vice chancellor's] opinion, however, contains an intimation that the rule adopted in the Pennsylvania courts, that the existence of a highway upon a tract of land included within the metes and bounds thereof does not amount to a breach of the covenant against encumbrances, is the law in this state. We prefer to express no opinion upon that point until the necessity arises."
In the later case of McAndrews & Forbes Co. v. Camden Nat. Bk, 87 N.J.L. 231, 234 (E. & A. 1915), our then court of last resort again declined to express an opinion on the point that "where the property conveyed is a farm or other open tract, with an existing road running through it, a warranty *454 without mention of the road is not broken by its existence, on the theory that the road is a physical fact of which the buyer is necessarily apprised." In that case the locus in quo was situate in a city, and as to such a situation the court said:
"* * * we consider the correct rule is that laid down in Hymes v. Esty, 116 N.Y. 501, 22 N.E. 1087, 15 Am. St. Rep. 421, where it was said: `But when no such opportunity [to observe on the ground an actual devotion to public use] exists, and no means of notice of the existence of the right to a public easement is open to observation upon the premises, there is no well-founded reason to support the proposition that the subsequent appropriation by the public, in the exercise of such pre-existing right, of a portion of the land conveyed, is exempt from the operation of the covenant of warranty. In such case it cannot be said that the purchaser, without notice of the existing burden upon the land, has taken title in reference to it, or that he gets all the propriety right in the premises which he is permitted to assume was assured to him by the covenant of his grantor.'" Ibid.
In the Esty case it was held that the trial court should have submitted to the jury the propositions of whether (1) the land in question was in fact a public easement, (2) there was at the time of plaintiff's purchase any indication of a public street, (3) the plaintiff had notice, either actual or constructive, of the public easement, and (4) the land in question was embraced in the conveyance. Hymes v. Esty, supra, 22 N.E., at p. 1089.
While our courts have seemingly shown a preference toward the majority rule, its application should not be invoked where the facts upon which it must rest are in doubt.
The testimony and exhibits in the instant case raise factual issues which should have been submitted to the jury, i.e., whether the right-of-way across the lands purchased by Old Falls was, on the date the deed was delivered to it, of such a nature, character and extent that general knowledge thereof was imputable to the contracting parties. See Hymes v. Esty, supra. If the jury should find that the roadway in question was at that time used as a public facility as a matter of common knowledge, then the application of the afore-mentioned majority rule would require a determination that the *455 grantors' covenant against encumbrances was not breached. If, on the other hand, the jury should resolve that said right-of-way was not so used by the public, with common and general knowledge of its existence and use imputable to the parties herein, then its existence would constitute an encumbrance against the lands sold to the plaintiff and there would be a breach of the grantors' general warranty covenants which would entitle the grantee to damages in an amount to be ultimately ascertained by the jury under proper instructions from the trial court.
The parties have not in their pleadings or in their appearance before the court projected the possibility of having their entire transaction rescinded on the ground of mutual mistake, and that theory not having been advanced we do not undertake to decide whether such remedy is now available to them.
We are impelled to remand for plenary hearing consistent with the foregoing opinion.