EDWARD B. PRYOR et al., Individually and as Trustees under a Certain Declaration of Trust Wherein They Are Described as The "Buffalo Terminal Association," Respondents, v. CITY OF BUFFALO, Appellant, Impleaded with Others.

**Real property — easements — when grantee's knowledge of existing easements does not defeat his right to object to a title — interest — rate, after breach of contract.**

It is the settled law of this state that the knowledge, in a grantee, of existing easements does not defeat his right to object to a title, except in the case of a public highway and the lawful structures thereon.

The rate of interest is fixed by a contract to pay money up to the time of default, but after breach the rate of interest is determined, not by the contract, but by statute.

The city of Buffalo, in a conveyance to the plaintiffs, agreed in substance that within one year from the date thereof it would give to the plaintiffs good title and possession to the whole and every part of certain premises described therein, free and clear of liens and incumbrances of every kind, name and nature "other than those now on such premises." In case of failure to give good title within twelve months, the city agreed, upon receiving a reconveyance of the property, to repay the purchase money, with three per cent interest from the date of the conveyance from the city to the plaintiffs. The New York Central and Hudson River Railroad Company, at the time of the conveyance, occupied a portion of the premises by its tracks, a fact which was known to the plaintiffs, but they did not know of its legal right to maintain them. The railroad company had at that time acquired title to at least a substantial portion of such premises, and in consequence thereof the city could not give a good title to the plaintiffs. The city failed to perform its covenants; refused, on plaintiffs' tender of a deed of reconveyance, to accept the same, and declined to repay the purchase money upon the ground that plaintiffs must be deemed to have contracted with reference to the occupancy by the railroad company, and was bound to accept the title thus incumbered. The purchase price was in the meanwhile held as a special fund by the city. This action was brought to compel the city to specifically perform its contract to repay plaintiffs such purchase price. *Held,* that the city of Buffalo is subjected to no special hardship by being required to strictly perform its special covenant to accept a reconveyance and repay the purchase money, while plaintiffs have paid out a large sum and received a conveyance of property which turns out, upon subsequent examination, to be absolutely useless for the purposes contemplated. Hence, the city must repay the moneys received by it, with interest at the rate agreed upon up to the date when it refused, upon demand, to repay the purchase price, and with interest thereafter at the legal rate.

*Pryor* v. *City of Buffalo,* 134 App. Div. 911, affirmed.

(Argued November 29, 1909; decided December 17, 1909.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered October 1, 1909, modifying and affirming as modified a judgment in favor of plaintiffs entered upon a decision of the court on trial at Special Term which adjudged that defendant city of Buffalo specifically perform its contract to repay plaintiffs the purchase price of the premises known as the

Main and Hamburg canal strip in the city of Buffalo, amounting to $901,000, with interest, as hereinafter stated.

It is further adjudged, in substance, that the city be required to accept the reconveyance tendered by the plaintiffs; and that they be deemed to have a lien on the fund on deposit with the defendant Commonwealth Trust Company, consisting of the purchase price, with accrued interest; and that plaintiffs have judgment against the city for the deficiency, if any. (Mr. Justice WILLIAMS, dissenting.)

The following facts appear, among others, in the one hundred and five findings of the trial court: The legislature of this state, acting under power conferred by article VII, section 8, of the Constitution of 1894, enacted as follows: "The canal known as the Main and Hamburg Street Canal situated in the city of Buffalo and which extends easterly from the westerly line of Main street to the westerly line of Hamburg street, shall immediately after the passage of this act cease to be a public canal or waterway, within this state, and the ownership, right, title and interest of the state of New York to the lands and premises included therein and connected therewith, shall vest absolutely in the city of Buffalo, its successors or assigns," etc.

In consideration of this conveyance the city of Buffalo was required to abate all nuisances along the line of said canal, and to fill the prism with solid material, and save the state harmless from all loss or damage which might be sustained by reason of claims arising out of the abandonment by the state of said canal. (Laws of 1898, chap. 295.)

The legislature subsequently enacted chapter 578 of the Laws of 1899, entitled "An act to authorize the city of Buffalo to sell and convey the Main and Hamburg Street Canal, and the lands and premises included therein and connected therewith, or any part or parts thereof."

It was found, in substance, that prior to July 1st, 1905, the city of Buffalo had filled the prism of the canal with solid matter and abated the nuisances formerly existing therein. Thereafter and about the 22d day of January, 1906, the com-

mon council of the city of Buffalo adopted a resolution direct-
ing the comptroller of the city to advertise for sealed bids for
the sale of the premises covered by the Hamburg canal strip.
This resolution described the strip in two pieces, one between
Main and Washington streets, which is not affected by this liti-
gation, and the other piece extending from Washington street
to Hamburg street, excepting the intersecting streets with the
grade crossing structures thereon, and providing for the right
of the purchaser to cross and recross such intersecting streets,
but not to interfere in any wise with the grade crossing struct-
ures. This resolution contained no provision for reconvey-
ance or payment of damages which might · result from inter-
ference with the grade crossing structures for the purpose of
crossing the streets mentioned.

The strip involved in this litigation is about one mile long
and one hundred and thirty feet wide, except in places it is
somewhat narrower.

It is unnecessary to consider in detail the bid and proposed sale
under this resolution, as the mayor of the city of Buffalo returned
this action of the common council without his approval.

Thereafter and on or about the 23rd and 25th days of
April, 1906, a second resolution was passed by the common
council to sell said premises to Lee, Higginson & Company,
bankers of Boston, Massachusetts, at the bid of $901,000,
and directing the mayor to execute a good and sufficient deed
under the city seal of said land and premises described in the
resolution containing the following covenant which is con-
trolling of the rights of the respective parties in this litiga-
tion. It reads: "It is further mutually agreed and under-
stood that in case the party of the first part shall not give
good title and possession to the whole or any part of the
premises, and of and to the rights and privileges herein set
forth, then within twelve months from the date hereof
the parties of the second part, upon a reconveyance of said
premises as herein provided, shall receive the entire pur-
chase price with three per cent. interest from the date hereof,
upon a reconveyance, by a good and sufficient deed to the

said party of the first part of the premises as hereby deeded, free and clear of liens or incumbrances of every kind, name and nature, other than those now on said premises; and also excepting taxes or assessments or other incumbrances in the nature thereof, placed thereon or assessed against said premises by the said party of the first part intervening the date hereof and such reconveyance. In the event that the parties of the second part, or their successors in interest, shall have paid any such taxes or assessments, or any incumbrances in the nature thereof, to the said party of the first part, the full amount of such payments shall be refunded by the said party of the first part upon such reconveyance. The grade crossing structures over or upon any of the streets herein excepted, and all approaches, and all things thereto pertaining, wherever the same shall have been changed, altered or added to by said parties of the second part, or their successors in interest, shall be in the same condition, wear and tear excepted, as at the date hereof, before the parties of the second part, or their successors in interest, shall be entitled to the repayment of the purchase price as herein provided."

The sale to Lee, Higginson & Company, as trustees, described as constituting the Buffalo Terminal Association, was duly made and a deed delivered to them by the city of Buffalo, dated the 29th day of June, 1906, containing the above quoted covenant.

At the time this conveyance was executed, the tracks of the New York Central and Hudson River Railroad Company crossed certain portions of the premises in question. This occupancy of said railroad company had continued for more than fifty years prior to the conveyance.

It was found " That the city of Buffalo, and its successors, including the mayor, knew, prior to the 25th day of April, 1906, that said premises were being purchased by Lee, Higginson & Company on behalf of a steam railroad company, with the purpose and object of using the same for a railroad terminal, and among other things, of laying railroad tracks lengthwise upon said premises at grade."

It is found as a conclusion of law that "The defendant, city of Buffalo, on the 29th day of June, 1906, had a good and indefeasible title to the premises known as the Main and Hamburg Canal in the city of Buffalo, and described in the deed to plaintiffs as trustees, dated June 29th, 1906, and of the whole thereof, except those portions occupied by the New York Central and Hudson River Railroad Company and by the Howard Iron Works, respectively, by adverse possession, which title, on said date, in and by the said deed, dated June 29th, 1906, became vested in the plaintiffs as trustees."

It was further found as a conclusion of law that "The defendant, city of Buffalo, has not given the plaintiffs a good title to that portion of said premises occupied by the tracks of the New York Central and Hudson River Railroad Company near Chicago street, and the city of Buffalo cannot give and has not given the plaintiffs possession of that portion of said premises. That the defendant, city of Buffalo, has not given the plaintiffs good title and possession of and to the right and privilege to cross and recross Michigan street, Chicago street and Louisiana street, or either of them."

The court further found "That said tracks are maintained and operated by the New York Central and Hudson River Railroad Company across the premies conveyed by the said city of Buffalo to the plaintiffs, as trustees, under claim of right by such railroad company. That said approaches and tracks of the New York Central and Hudson River Railroad Company occupy 4,646 square feet of said premises."

It was further found "That prior to the 29th day of June, 1906, the city of Buffalo, by its mayor, had notice of the claim of the New York Central and Hudson River Railroad Company that said tracks were operated by said railroad company under the rights granted by the State of New York prior to the time of the transfer of title of the Main and Hamburg Street Canal from the State of New York to the city of Buffalo."

It was further found "That said premises described in the deed from the City of Buffalo to the plaintiffs, as trustees,

cannot be used for railroad purposes bisected by the tracks of the New York Central and Hudson River Railroad Company and obstructed by said grade crossing structures and ramps which prevent the passage of trains across Michigan, Chicago and Louisiana streets. That said premises described in said deed from the City of Buffalo to the plaintiffs, as trustees, are practically valueless for railroad purposes bisected by said tracks of the New York Central and Hudson River Railroad Company and obstructed by said grade crossing structures and ramps which prevent the passage of trains across Michigan, Chicago and Louisiana streets."

It was further found " That the purchasers of said Main and Hamburg canal lines in the city of Buffalo well knew of the existence of said railroad tracks across the same at the time of the purchase thereof. That the plaintiffs at the time of the purchase of said property had no knowledge of the legal right of the New York Central and Hudson River Railroad Company to maintain said tracks across said premises."

The following facts were found, but need not be stated *in extenso*. It appears that the city of Buffalo has kept the $901,000, paid for the premises, as a special fund in the Commonwealth Trust Company; that the plaintiffs made a due tender of a deed of reconveyance to the city, and that said tender has been kept good; that the plaintiffs filed their claim against the city of Buffalo in accordance with the provisions of its charter more than forty days prior to the commencement of the action.

As bearing upon the knowledge of the city of Buffalo of the rights of the New York Central and Hudson River Railroad Company in the premises, it is found that on or about the 4th day of November, 1902, in compliance with a resolution of the commissioner of public works, the city removed said tracks of the New York Central and Hudson River Railroad Company crossing the Main and Hamburg canal near Chicago street; that thereafter and on the 4th day of November, 1902, an agreement, purporting to be executed by the city of Buffalo, by its commissioner of public works, and by the

9

New York Central and Hudson River Railroad Company, was entered into whereby, among other things, said railroad company agreed to *restore said tracks to their previous condition* and waive all claims for damages by reason of any interference therewith; and further agreed to institute legal proceedings within thirty days to determine the right to maintain said tracks and bridge over the Hamburg canal property. There is no finding that said legal proceedings were ever instituted.

*Louis E. Desbecker, Corporation Counsel (Samuel F. Moran of counsel), for appellant.* At the most, the purpose or intent of the provision for a reconveyance and the return of the purchase price " in case the City shall not give good title and possession," was to keep alive for twelve months the purchasers' right to insist on having the same title to which the executory contract entitled them, and no more. (*Shoemaker* v. *Hoyt,* 148 N. Y. 428 ; *Bull* v. *Willard,* 9 Barb. 641 ; *Close* v. *Zell,* 141 Penn. St. 390.) There is no express warranty of title in the executory contract, and the law will imply none as to defects of which the purchasers had knowledge. Notice is sufficient to rebut the implication of warranty of title that might otherwise arise. (*Gazely* v. *Price,* 16 Johns. 267 ; *Parker* v. *Parmelee,* 20 Johns. 130; *Burwell* v. *Jackson,* 9 N. Y. 535 ; *Leggett* v. *M. L. Ins. Co.,* 53 N. Y. 394 ; *N. S. Inst.* v. *Jones,* 37 N. J. Eq. 449 ; Fry on Spec. Perf. [2d ed.] 228 ; Pom. on Cont. [2d ed.] § 157; *Winne* v. *Reynolds,* 6 Paige, 407 ; *James* v. *Litchfield,* L. R. [9 Eq.] 51 ; *Ogilvie* v. *Foljanbe,* 3 Meriv. 52 ; *Cowley* v. *Watts,* 22 L. J. [N. S.] Eq. 51 ; *Matter of Gloag,* L. R. [23 Ch. Div.] 320 ; *Bash* v. *C. M. Co.,* 29 Wash. 50.) Mere notice being sufficient to rebut the implication of warranty it must necessarily follow that in every contract of sale where any part of the premises is in the open and visible use of a railroad company such contract of sale is made subject to such open and visible use. (*Witbeck* v. *Cook,* 15 Johns. 483 ; *Hymes* v. *Estey,* 116 N. Y. 501 ; *Webster* v. *K. C. T. Co.,* 80 Hun, 420 ; 145 N. Y. 275 ; *Koepke* v. *Bradley,* 3 App. Div. 391 ; *Bach-*

*arch* v. *Von Eiff*, 74 Hun, 533; *Smith* v. *Hughes*, 50 Wis.
620; *Bennett* v. *Buchan*, 76 N. Y. 386; *Constant* v. *University of Rochester*, 111 N. Y. 604; *Daniels* v. *Davidson*,
16 Ves. 251; *James* v. *Litchfield*, L. R. [9 Eq.] 50.) If the
purchasers had any right to object to the title on account of
the New York Central tracks they have waived any such right.
(*Ryan* v. *City of New York*, 177 N. Y. 271; *Matter of Gloag*,
L. R. [23 Ch. Div.] 320; *Burnell* v. *Brown*, 1 J. & W. Ch.
168; *Tompkins* v. *Hyatt*, 28 N. Y. 347; *Matter of Cooper*,
93 N. Y. 507; *People* v. *Police Commissioners*, 174 N. Y.
450; *Ryan* v. *City of New York*, 177 N. Y. 271; *Embry* v.
*Connor*, 3 N. Y. 511; *Grymes* v. *Sanders*, 93 U. S. 55;
*Schiffer* v. *Dietz*, 83 N. Y. 300; *Cobb* v. *Hatfield*, 46 N. Y.
533.) Plaintiffs' evidence fails to establish that the New York
Central Railroad Company has a right to continue to maintain and operate the railroad tracks across the premises. The
acts of the legislature which they claim confer vested rights,
if so construed, are unconstitutional as being an appropriation
of public property to private uses without the assent of two-
thirds of all the members elected to each branch of the legis-
lature as required by section 9 of article 7 of the Constitution
of 1821 and section 9 of article 1 of the Constitution of 1846.
(*People ex rel. Purdy* v. *Comrs.*, 54 N. Y. 297; *Rumsey* v.
*N. Y. & N. E. R. R. Co.*, 130 N. Y. 38; *McCormack* v.
*Coddington*, 184 N. Y. 467; *Burbank* v. *Fay*, 5 Lans. 387;
*Mattoon* v. *Monroe*, 21 Hun, 74; *Elwood* v. *City of Roches-
ter*, 43 Hun, 102; *G. V. C. R. R. Co.* v. *Slaight*, 49 Hun, 35.)
The Appellate Division erred in modifying the judgment so
as to allow plaintiffs interest at the legal rate on the purchase
price for the period intermediate the attempted reconveyance
and the entry of judgment. The contract of the parties for
interest at three per cent is not confined to the time limited
for the payment of the principal but is general and continues
until the contract is merged in a judgment. (*E. I. & R. M.
Co.* v. *City of Elmira*, 5 Misc. Rep. 494; *Miller* v. *Bur-
roughs*, 4 Johns. Ch. 436; *Van Buren* v. *Van Gaasbeck*, 4
Cow. 496; *Sullivan* v. *Fosdick*, 10 Hun, 173; *Andrews* v.

*Keeler*, 19 Hun, 87; *Cromwell* v. *County of Sac*, 96 U. S. 51; *Patterson* v. *Graham*, 16 N. Y. S. R. 703, 706; *Genet* v. *Kisham*, 21 J. & S. 43; *Taylor* v. *Wing*, 84 N. Y. 471; *O. C. S. Bank* v. *Bd. of Education*, 70 App. Div. 538.)

*Adelbert Moot*, *William L. Marcy* and *Helen Z. M. Rodgers* for appellants. The occupation of a portion of the conveyed premises by the New York Central and Hudson River Railroad Company under legislative authority, constitutes a material defect in title, and a failure to give possession, justifying a reconveyance of the property and recovery of the purchase price. (*Hindley* v. *M. Ry. Co.*, 185 N. Y. 335; *Matter of City of Buffalo*, 68 N. Y. 167; *Trustees of Columbia College* v. *Lynch*, 70 N. Y. 440; *Matter of St. Nicholas Terrace*, 143 N. Y. 621; *Daniel* v. *Shaw*, 166 Mass. 582; *Harlow* v. *Thomas*, 15 Pick. 66; *Eller* v. *Moore*, 48 App. Div. 403; *Huyck* v. *Andrews*, 113 N. Y. 81; *E. P. & C. Co.* v. *City of Buffalo*, 195 N. Y. 286; *Remson* v. *Wingert*, 112 App. Div. 234.) Plaintiffs have not waived any of their rights. (*C. W. & C. Co.* v. *N. P. C. Co.*, 190 N. Y. 1; *B. T. Ry. Co.* v. *H. V. R. R. Co.*, 76 App. Div. 184; *Karsch* v. *P. & S. Mfg. Co.*, 82 App. Div. 230; *Newkirk* v. *N. W. Co.*, 66 App. Div. 639; *Huyck* v. *Andrews*, 113 N. Y. 81; *Lossing* v. *Cushman*, 195 N. Y. 386; *Lese* v. *Lamprecht*, 196 N. Y. 32; *Uihlein* v. *Matthews*, 172 N. Y. 154; *Cobb* v. *U. E. Co.*, 191 N. Y. 475; *F. Nat. Bank of Lyons* v. *Ocean Nat. Bank*, 60 N. Y. 278; *Kountze* v. *Helmuth*, 140 N. Y. 432.) Plaintiffs are entitled to interest at the rate of six per cent from the date of the tender. (*O'Brien* v. *Young*, 95 N. Y. 428; *Ferris* v. *Hard*, 135 N. Y. 354; *O. C. S. Bank* v. *Bd. of Education*, 70 App. Div. 538; *Lawrence* v. *Grout*, 121 App. Div. 701; *Persons* v. *Gardner*, 122 App. Div. 167; *Woerz* v. *Schumacher*, 161 N. Y. 530; *Blun* v. *Mayer*, 189 N. Y. 153; *Grote* v. *City of New York*, 190 N. Y. 235.)

EDWARD T. BARTLETT, J.   It is to be kept in mind at the outset that we are not dealing with the ordinary form of deed

containing full covenants. This deed, after a description of the property and certain exceptions not necessary to consider at this time, contains a covenant on the part of the purchasers in regard to the payment of future consequential damages in excess of fifty thousand dollars, arising from the change of any of the grade crossing structures; and the city of Buffalo, party of the first part, assumes and agrees to pay such damages to the extent of fifty thousand dollars. The party of the first part also reserved the perpetual right to repair, maintain and operate the existing sewers, etc. The details of this covenant are not important.

Then follows the unusual covenant, already quoted in full in the foregoing statement of facts, which provides, among other things, that if the city of Buffalo (party of the first part) shall not give good title and possession to the whole or any part of the premises, and of and to the rights and privileges therein set forth, then within twelve months from the date of said conveyance, the plaintiffs (parties of the second part), upon a reconveyance of said premises, shall receive a return of the entire purchase price, with interest as therein provided.

We are not considering the usual situation, where a grantee accepts the conveyance of premises under an ordinary full covenant warranty deed, but are dealing with an important and special covenant, designed to meet an unusual situation, and upon which the determination of this case turns.

It was proved that the defendant Wabash Railroad Company was the party for which Lee, Higginson & Company, brokers and trustees, acted, and that it was anxious to acquire title to the portion of the Main and Hamburg canal strip contained in the description of the deed. The purpose and contemplation, as is found, was the laying of railroad tracks lengthwise upon the premises at grade. The city of Buffalo agreed, in substance, to give the Buffalo Terminal Association (a name adopted by the trustees), or the party it represented, good title and possession to the whole and every part of the premises within the period of twelve months, and failing to do so, it would accept a reconveyance and repay the

purchase price with interest. The city failed to perform its covenant, refused on a tender of a deed of reconveyance to accept the same and declined to repay the purchase money with interest. This refusal to perform rests on the assertion that the occupancy of a certain portion of the premises by the New York Central and Hudson River Railroad Company was open and visible; that the plaintiffs must be deemed to have contracted in reference to the same and bound to accept the title thus incumbered. The findings have very clearly fixed the *status* of the parties as to the degree of knowledge possessed by each when the conveyance by the city was executed.

It is found that the plaintiffs, at the time of the purchase, knew of the existence of the tracks of the New York Central and Hudson River Railroad Company, but had no knowledge of its legal rights. It is also found that prior to the date of the deed to the plaintiffs, June 29th, 1906, the city of Buffalo, by its mayor, had notice of the claim of the New York Central and Hudson River Railroad Company that said tracks were operated by said company under rights granted by the state of New York prior to the transfer of title of the Main and Hamburg canal from the state of New York to the city of Buffalo. It further appears that in 1902 the city of Buffalo tore up a portion of the tracks of the New York Central and Hudson River Railroad Company, but under an agreement with the railroad company the latter restored the tracks and waived all claims for damages.

It further appears that the search furnished by the city of Buffalo to the plaintiff, April 10th, 1906, failed to disclose any acts of the legislature or other facts tending to advise them that the New York Central and Hudson River Railroad Company had any legal right in and upon the premises in question.

The complete knowledge of the city of Buffalo as to all the details concerning the rights of the New York Central and Hudson River Railroad Company clearly appears, as already pointed out, in the facts as found. The history of the canal strip begins in 1838. In 1840 the city conveyed the premises

by quitclaim deed to the state and title so remained until the Constitution of 1894 (Article VII, § 8), and an act of the legislature in pursuance thereof (Laws of 1898, chap. 295) when it was revested in the city of Buffalo. The legislature later empowered the city of Buffalo to sell and convey the property (Laws of 1899, chap. 578).

During the interval between the conveyance by the city of the property to the state in 1840, and the amendment of the Constitution of 1894, the recognition by the legislature of the rights of the New York Central Railroad Company on the property in question was repeatedly recognized. (Laws of 1843, chap. 169, § 3; Laws of 1847, chap. 29, § 3; Laws of 1849, chap. 113; Laws of 1850, chap. 236; Laws of 1852, chap. 91, § 2.) The railroad corporations referred to in the foregoing acts of the legislature, together with others, were subsequently consolidated with the New York Central Railroad Company (Laws of 1853, chap. 76), and the latter succeeded to their rights and franchises.

In 1870 the common council of the city of Buffalo passed a resolution authorizing the New York Central Railroad Company to move the present bridge over the Main and Hamburg canal a distance of three feet, and to erect an additional single-track iron bridge on the easterly side of the existing bridge.

The city insists that the acts of the legislature, to which reference has been made, if construed to vest the New York Central and Hudson River Railroad Company, or its predecessors, with the right to operate its tracks across the premises, is unconstitutional as being an appropriation of public property to private use without the assent of two-thirds of all the members elected to each branch of the legislature as required by the Constitution of 1821 (Art. VII, § 9) and the Constitution of 1846 (Art. I, § 9).

So far as the acts of the legislature attempted to convey to the railroad companies title to a portion of the lands in question, we think it unnecessary to pass on the point whether they came within the provisions of the Constitutions concern-

ing the appropriation of public property for private pur-
poses. These acts were not utterly void or nugatory; they
were at least effective to an extent which prevented the
railroad from being a naked trespasser and its tracks a nui-.
sance, when in accordance with the terms of the acts it
entered into possession of the premises. Certain of these
acts were passed more than fifty years ago, and ever since the
present railroad company or its predecessors have been in open
possession of substantially the same premises now occupied by
it, claiming title thereto under said acts. The defendant has
long been aware of this situation and claim, and was sufficiently
impressed with its force so that proceedings at one time insti-
tuted to remove its tracks were abandoned and the defendant
ever after allowed to remain in undisturbed possession.
Under the provisions of the Constitution of 1894 and the act
of 1898 the city succeeded only to the rights of the state, and
under all the circumstances we think it must be held that the
railroad company, by virtue of its possession in accordance
with its claims based on the statutes referred to, has acquired
title at least to a substantial portion of the premises now occu-
pied by it. It is immaterial for the purposes of this action
whether its title covers the whole or only a portion of said
strip. The lesser title would be a sufficient basis for plaintiff's
claim that the covenant in defendant's deed was violated.

The city of Buffalo insists that, notwithstanding the deed
executed by it to the plaintiffs, and the absolute and special
covenant contained therein, it is entitled to rest upon the fact
that the plaintiffs were aware that the New York Central
and Hudson River Railroad Company was in the open and
visible occupation of a certain portion of the premises
conveyed.

It is the settled law of this state that the knowledge in the
grantee of existing easements does not defeat his right to
object to the title except in the case of a public highway and
the lawful structures thereon. It is argued on behalf of the
city that this rule should also apply to existing railways, and
in support of this contention many authorities are cited in

foreign jurisdictions, but none is pointed out in this state Judge Earl, when writing in *Huyck* v. *Andrews* (113 N. Y. 81, at page 90) stated, after counsel had cited many cases from foreign jurisdictions : " We do not yield assent to these authorities. They have no sanction in any of the cases decided in this state, and have no adequate foundation in principle or reason."·

In the case just cited the plaintiff's intestate had received by a full covenant warranty deed certain lands which were subject to an easement in one Briggs to use the whole of the water in a creek on the premises. Subsequently to the conveyance to Mrs. Huyck, Briggs entered upon the land and built an embankment westerly from the edge of the creek to a high bank upon her land. Afterwards Mrs. Huyck brought this action for the breach of the covenant contained in her deed caused by the existence and use of the easements imposed upon the land conveyed to her. She recovered and the defendant appealed. He claimed that the easement was open, visible and well known to Mrs. Huyck at the time she took her deed and that, therefore, the covenant in the deed did not protect her against it. Judge Earl says at the bottom of page 84 and top of page 85 : " It is true that she knew that the paper mill and dam across the creek were there, and that the waters of the creek had been used for many years for the purposes of the mill. But it does not appear that she knew the full extent of Briggs' easement, or that she had any knowledge whatever that he had any paramount right to the exclusive use of the waters of the creek or to maintain his dam where it was located as high as he wished. But even if she had such knowledge, that fact furnished no defense to this action. * * *· Proof of such knowledge would be quite important in an action brought by her grantor to reform the deed, but as a defense to an action upon the covenants contained in the deed, it is of no importance whatever. That the covenant against incumbrances is broken by an outstanding easement of any kind is perfectly well established by the authorities in this state, and there is.

no hint in any of them that knowledge by the grantee of the existence of the easement at the time of the conveyance makes any difference.  \*  \*  \*  There is in this state one exception to the rule that the existence of an easement constitutes a breach of the covenant against incumbrances, and that is in the case of a highway. It was held in *Whitbeck* v. *Cook* (15 Johns. 483), that it is not a breach of the covenants that the grantor was lawful owner of the land, was well seized, and had full power to convey, that part of the land was a public highway, and was used as such; and that decision has ever since been regarded as the law in this state." Referring to the *Whitbeck* case, Judge Earl said (p. 86): " While there was not in the deed there under consideration any covenant against incumbrances, yet the *ratio decidendi* is equally applicable to such a covenant; and since that decision it has always been understood in this state that such a covenant is not broken by the existence of a highway."

It is to be remarked that this last quotation from Judge Earl's opinion is applicable to the case at bar. In the deed given by the city to the plaintiffs the usual full covenants conveying real estate are omitted, and the contention of the plaintiffs rests upon the unusual special covenant heretofore discussed. (See on the general proposition *Remsen* v. *Wingert*, 112 App. Div. 234; affirmed, without opinion, 188 N. Y. 632; *Harlow* v. *Thomas*, 32 Mass. 66.)

As before stated, the three trustees who have represented the plaintiffs in this controversy were practically the Wabash Railroad Company. It is found that Edward B. Pryor was vice-president of that company; that George G. Yeomans was an assistant to the president, and that Henry F. Wardwell was chief clerk to the president. It appears that after the plaintiffs received their deed from the city of Buffalo, on the 29th day of June, 1906, Yeomans and others entered upon certain negotiations with the city of Buffalo and others as to various matters that would have been the subject of legitimate discussion if the city had given plaintiffs such title as was called for by the special covenant. These negotiations

were introduced over plaintiffs' objection and exception, and resulted in the proof of various interviews between the alleged representative of the plaintiffs and persons in the interest of the defendant, the city of Buffalo and others, based apparently upon the assumption that the city would perform its covenant contained in its deed.

The city now insists that these negotiations placed a practical construction upon the contract, and that they operated to waive any objection which the Wabash Railroad Company might have by reason of the vested rights of the New York Central and Hudson River Railroad Company to maintain its tracks on the canal strip.

It is quite unnecessary, in the view we take, to attempt the examination in detail of all these negotiations. In brief they refer to the subject of valuation of the property for taxation, claiming that the present assessment was too high. The Wabash Railroad Company then undertook certain independent negotiations with the New York Central and Hudson River Railroad Company which accomplished nothing and could not bind the city under any circumstances. There were also some negotiations as to grade crossing structures and how they might be altered without detriment to any one. Suffice it to say that all these negotiations and others came to naught, and it does not appear that the city of Buffalo did anything whatever, during the year allowed it under its deed, to fulfill the covenant to give the plaintiffs good title and possession of the premises and every part thereof.

It is insisted by the learned counsel for the plaintiffs, as already stated, that the evidence of all these so-called negotiations, after the delivery of the deed by the city to the plaintiffs on the 25th day of June, 1906, is a violation of the old and well-settled principle of law recently restated by this court. In *Lossing* v. *Cushman* (195 N. Y. 386), VANN, J., states at page 390 as follows : " The evidence objected to did not tend to dispel a doubt by an explanation consistent with the terms of the written contract. It tended to make a new contract. Witnesses were permitted to swear out of the contract some-

thing which the parties had written in and to swear into the contract something which the parties had not written in. This, if sustained, would leave no contract safe, and the most prudent person could not erect a barrier against misunderstanding, forgetfulness or perjury." Also the case of *Lese* v. *Lamprecht* (196 N. Y. 32). Judge Chase states at page 37 as follows: "The value and integrity of a written instrument is largely dependent upon the fact that it cannot be broken down or modified by a statement of alleged conversations and occurrences leading up to its execution. Where a written contract is clear in its terms and purports to express the entire arrangement of the parties and to direct upon all the questions under consideration it conclusively determines the rights of the parties and can neither be contradicted, varied nor explained. (Citing cases.)  *  *  *  The written contract between the parties now before us provided for a deed free from all incumbrances."

It is further found that on the 25th day of June, 1907, and immediately prior to the expiration of twelve months from the date of said deed by the city of Buffalo to plaintiffs, as trustees as aforesaid, the plaintiffs offered to the mayor of the city of Buffalo a deed of reconveyance of said premises, rights, privileges, easements and property rights, together with the discharge of a mortgage that had been placed upon said premises in the interval; and also tendered two dollars to pay costs of recording such discharge, and delivered to said mayor an instrument in writing which is contained in the findings. The mayor refused to accept the deed of reconveyance, the discharge of the mortgage and to return the purchase price paid by the plaintiffs for said premises.

It is further found that on the 15th day of May, 1907, the plaintiff trustees caused to be served upon the mayor of the city of Buffalo a letter, stating four distinct grounds for refusing to take title on the approaching law day, among which was the existence of the two tracks of the New York Central and Hudson River Railroad Company.

The city of Buffalo, in its conveyance to the plaintiffs,

agrees, in substance, that within one year from date thereof it will give good title and possession to the plaintiffs to the whole and every part of the premises in question, free and clear of liens and incumbrances of every kind, name and nature, other than those now on such premises. The additional details of this covenant are unnecessary to quote in this connection. It is to be observed, as already stated, that this special covenant must be performed as stated, or in default thereof the city of Buffalo must accept from the plaintiffs a deed of reconveyance and repay to them the purchase money. This is not an action where damages are sought to be recovered. The plaintiffs ask the restoration of the situation as it existed prior to the delivery of the deed of the city to them.

It is found that the city placed the $901,000 purchase money in a trust company as a special fund. The city of Buffalo is subjected to no particular hardship by being required to perform its covenant. These plaintiffs on the contrary occupy a very different position. They have paid out nearly one million of dollars and received a conveyance of property that turns out upon subsequent examination to be absolutely useless for the purposes contemplated and found.

The question of the rate of interest was a matter of difference in the courts below. It will be recalled that the special covenant in the deed which provided for the return of the purchase money in one year, under certain circumstances, was to bear interest at the rate of three per cent from the date of the conveyance to the return of the money at the time agreed upon. The Special Term allowed interest at the rate of three per cent up to the date of the breach of the covenant and at four per cent thereafter, stating that this rate was fixed in accordance with agreement made between a certain trust company and the treasurer of the city of Buffalo. The Appellate Division affirmed the judgment, modifying it as to interest. The order reads: "It is hereby ordered that the judgment so appealed from be and the same hereby is modified by allowing plaintiffs interest at the legal rate from the 25th day of June, 1907, the date when the defendant city

refused to allow repayment of the purchase price upon demand, and as so modified affirmed, with costs to the plaintiffs."

It is difficult to understand upon what theory the Special Term allowed four per cent in accordance with the agreement made between a trust company and the treasurer of the city of Buffalo, the plaintiffs not being parties to this contract and arrangement; it is a matter in which they had no concern. We agree with the learned Appellate Division that interest at the legal rate attaches from the date of breach.

In *Ferris* v. *Hard* (135 N. Y. 354) Judge PECKHAM stated as follows (p. 365): "In the present case the amount of principal was stated, and it was agreed to be paid in installments of $2,500 in four annual payments, and the sums remaining from time to time unpaid were to bear interest at seven per cent. This clearly meant that the interest on the principal sum, which, by the terms of the mortgage, was not due, was to be at seven per cent. Thus the whole principal sum of ten thousand dollars was to be at an interest of seven per cent from the time of the execution of the mortgage until an installment became due, and then when the installment was paid the interest on the balance remaining unpaid, but not yet due, was also to be at the same rate. If an installment were not paid when due, the contract was violated, and interest after that upon such installment could only be recovered as damages and at the rate of interest authorized by law. (*Bennett* v. *Bates*, 94 N. Y. 354; *O'Brien* v. *Young*, 95 N. Y. 428.)"

In *Oswego City Savings Bank* v. *Board of Education* (70 App. Div. 538) it was held that the board of education, having refused to comply with a demand, made after the maturity of one of the bonds, for payment of the principal of such bond, was liable for interest on such bond from the time of such demand and refusal, computed at the statutory rate and not at the rate fixed by the bond. This case was affirmed in 174 N. Y. 515, without opinion. (See, also, *Lawrence* v. *Grout*, 121 App. Div. 701.)

In *Van Rensselaer* v. *Jewett* (2 N. Y. 135) it was held that where a debtor is in default for not paying money,

delivering property or rendering services, in pursuance of his contract, he is chargeable with interest from the time of default on the specified amount of money, or the value of the property or services at the time they should have been paid or rendered. (See, also, *Adams* v. *Ft. Plain Bank*, 36 N. Y. 255; *Blun* v. *Mayer*, 189 N. Y. 153, 156, 157, on the general principle involved.)

It seems to be the general rule of law that the rate of interest is fixed by the contract to pay money up to the time of default, but after breach the rate of interest is determined, not by the contract, but by statute.

It was held by this court that where trustees were to perform certain services in the premises and be reimbursed, that interest would be allowed on amounts due them in the exercise of a sound discretion. (*Woerz* v. *Schumacher*, 161 N. Y. 530, 537.)

It seems clear that the determination of this case, having its origin in a court of equity, requires that the money which was adjudged to be due the plaintiffs on the 25th day of June, 1907, should draw interest at the legal rate.

The judgment, as modified by the Appellate Division, should be affirmed, with costs.

CULLEN, Ch. J., GRAY, WILLARD BARTLETT, HISCOCK and CHASE, JJ., concur; HAIGHT, J., not voting.

Judgment affirmed.