## SCHWARTZ *v.* BLACK.*

### (*Nashville.* December Term, 1914.)

1. **COVENANTS. Breach. Damages.**

   Where, in a suit by a grantee for breach of general covenant of warranty and against incumbrances, because of railroad tracks and rights of way over the land, the evidence showed that the railroads were beneficial to the premises, the grantee could not recover substantial damages. (*Post, p.* 364.)

2. **COVENANTS. Covenants of warranty and against incumbrances. Breach. Damages.**

   Railroad tracks in existence and operation across a tract of land, when conveyed by deed containing a covenant of warranty and against incumbrances, are incumbrances, where the grantee, though inspecting the premises before purchase, was misled by the grantor into believing that the railroads were paying rent for the right of way, but the grantee could only recover nominal damages, where the railroads greatly benefited the premises. (*Post, pp.* 364-371.)

Case cited and distinguished: Rich v. Scales, 116 Tenn., 57.

Cases cited and approved: Kellogg v. Ingersoll, 2 Mass., 97; Hubbard v. Norton, 10 Conn., 422; Alling v. Burlock, 46 Conn., 504; Herrick v. Moore, 19 Me., 313; Lamb v. Danforth, 59 Me., 322; Butler v. Galek, 27 Vt., 739; Prichard v. Atkinson, 3 N. H., 335; Haynes v. Stevens, 11 N. H., 28; Memmert v. McKeen, 112 Pa., 315; Howell v. Northampton R. Co., 211 Pa., 284; Whitbeck v. Cook, 15 Johns (N. Y.), 583; Huyck v. Andrews, 113 N. Y., 81; Hymes v. Estey, 116 N. Y., 501; Hymes v. Estey, 133 N. Y., 342; Jordan v. Eve, Trustee, 31 Grat. (Va.), 1; Trice v. Kayton, 84 Va., 217; Patton v. Quarrier, Trustee, 18 W. Va., 447; Barre v. Fleming, 29 W. Va., 314; Desvergers v. Willis, 56 Ga., 516; Haldane v. Sweet, 55 Mich., 196; Kutz v. McCune, 22 Wis., 628; Bennett v. Booth, 70 W. Va., 264;

---

*On the question whether the existence of railroad rights of way across land at the time of conveyance is a breach of a covenant against encumbrances, see notes in 30 L. R. A. (N. S.), 844 and 48 L. R. A. (N. S.), 619.

Schwartz v. Black.

Ireton v. Thomas, 84 Kan., 70; Schurger v. Moorman, 20 Idaho, 97; Jones v. Jenkens, 34 Md., 1; Harrison v. Des Moines & Ft. D. R. Co., 91 Iowa, 114; Killen v. Funk, 83 Neb., 622; Sandum v. Johnson, 122 Minn., 368; Stuhr v. Butterfield, 151 Iowa, 736; First Unitarian Church v. Citizens Sav. & Tr. Co. (Iowa), 142 N. W., 87; Pierce v. Houghton, 122 Iowa, 477; Beach v. Miller, 51 Ill., 209; Burk v. Hill, 48 Ind., 52; Kellogg v. Malin, 50 Mo., 496; Tuscogee Land & Secur. Co. v. Birmingham Realty Co., 161 Ala., 522; Farrington v. Tourtelott (C. C.), 39 Fed., 738; Pilcher v. Atchison R. R. Co., 38 Kan., 516; Pryor v. Buffalo, 197 N. Y., 123; Van Ness v. Royal Phosphate Co., 60 Fla., 284; Goodman v. Heilig, 157 N. C., 6; Ex parte Alexander, 122 N. C., 727; Geren v. Caldarera, 99 Ark., 260; Perry v. Williamson, 47 S. W., 189; Wadhams v. Swan, 109 Ill., 46.

FROM DAVIDSON.

Appeal from the Chancery Court of Davidson County.—JOHN ALLISON, Chancellor.

VERTREES & VERTREES, for appellant.

SAMUEL N. HARWOOD and LOUIS LEFTWICH, for appellee.

MR. CHIEF JUSTICE NEIL delivered the opinion of the Court.

The bill in the present case was filed to recover of defendant damages for breach of a general covenant of warranty, and against incumbrances, contained in a deed which defendant made to complainant on October

14, 1911, for certain land lying in East Nashville on the bank of Cumberland river, just north of the Woodland street bridge. The action is based on the fact that, when the deed was made, there were two railway tracks and rights of way on the lot as follows: The Louisville & Nashville Railroad Company owned a track and right of way running across the lot in a diagonal direction, thence south to other lots and industries located thereon, the track at its northern end joining another track of the railway at main street, in East Nashville. The conveyance was of a strip of ground sufficiently wide for the construction of a single track railroad, and it provided that, in case the said strip of ground should ever cease to be used for railroad purposes, the title should revert to the makers of the deed, Wm. Sutherland and Charles Graves, the predecessors in title of defendant Black. The consideration was $3,000. This instrument was made May 11, 1889, and filed for registration in Davidson county May 15th of the same year, and duly registered. Subsequently, on the 17th of February, 1904, the standard Lumber & Box Company, then the owners of the lot, supplemented the previous instrument by definitely fixing the limits of the right of way at twenty-five feet; that is to say, twelve and one-half feet on each side of the track. This deed was registered in Davidson county April 19, 1904. There was also a spur track built by the Standard Lumber & Box Company, running out from the diagonal track above mentioned in an eastwardly direction across the lot. The diagonal track referred to

was constructed long prior to 1904, and was used by the Louisville & Nashville Railroad Company as a spur track from its main line to numerous industries lying to the south of the lot in question, also to industries operated on the lot in question.

The other track is known as the Ryman track; the facts concerning which are as follows: The Ryman elevator is located on the bank of the Cumberland river below this lot, and Mr. Ryman and the Louisville & Nashville Railroad Company desired to extend the "water track" of the railroad company from the elevator up the river, over the frontage of this lot. On July 5, 1903, Sutherland and Graves, the then owners of the lot, for the consideration of $1,000, conveyed to Thomas G. Ryman a right of way along the river front on this lot from its northern boundary to within fifty-five feet of its southern boundary, subject to several reservations, only two of which need be mentioned. One of these was that Sutherland and Graves were to have the right to cross the track with a "movable track," so as to permit them to draw up and let down timber and lumber from their factory, but not in a manner to obstruct the proper use of the road by the railway company; the other was the right to load and unload cars on the track, but not so as to conflict with the operation of Ryman's boats and elevators. The owners of the lot, when using the cars on the Ryman track for industries located on said lot, paid, as did all other persons, $1 per car for any car of lumber loaded and unloaded on the said track, and more

per car for all other kinds of merchandise. But the evidence shows that this was cheaper than hauling the merchandise in wagons to and from the landing.

The contention of the complainant is that these railroads are incumbrances, within the terms of the warranty, and that, as located, they diminish the value of the property at least $10,000. The defendant contends that the railroads are not incumbrances, within the meaning of the deed, and that, as a matter of fact, they do not diminish the value of the property at all.

There is much evidence on both sides of the question, but we are of the opinion that the weight of the evidence, shows that the railroads are not only not injurious to the lot but of great benefit. The lot is flat and low, lying on the bank of the river, and is useful only for factories. The evidence shows that without the roads this lot would be practically useless, and that these roads add to its value from twenty-five to fifty per cent. On the other hand, there is evidence to the effect that the roads, considering the way in which they are located or placed on the land, are an injury to it. But, as stated, the weight of the evidence decidedly sustains the conclusion that the roads are of great benefit to the land. It follows, therefore, that complainants are not entitled to any substantial damages.

It is insisted, however, that at all events the roads are technically incumbrances, and that complainants are entitled to recover their costs.

There is a controversy in the authorities on this subject. In the New England States it is held that even a public road running across the land, in use, open and visible, is an incumbrance, falling within a covenant against incumbrances, and must be accounted for in damages. *Kellogg* v. *Ingersoll,* 2 Mass., 97; *Hubbard* v. *Norton,* 10 Conn., 422; *Alling* v. *Burlock,* 46 Conn., 504; *Herrick* v. *Moore,* 19 Me., 313; *Lamb* v. *Danforth,* 59 Me., 322, 8 Am. Rep., 426; *Butler* v. *Galek,* 27 Vt., 739; *Prichard* v. *Atkinson,* 3 N. H., 335; *Haynes* v. *Stevens,* 11 N. H., 28. The general reason assigned is that it deprives the owner of that dominion over the land to which he is entitled. A different view is taken in other States. *Memmert* v. *McKeen,* 112 Pa., 315, 4 Atl., 542, and cases cited; *Howell* v. *Northampton R. Co.,* 211 Pa., 284, 60 Atl., 793; *Whitbeck* v. *Cook,* 15 Johns. (N. Y.), 583; *Huyck* v. *Andrews,* 113 N. Y., 81, 20 N. E., 581, 3 L. R. A., 789, 10 Am. St. Rep., 432; *Hymes* v. *Estey,* 116 N. Y., 501, 22 N. E., 1087, 15 Am. St. Rep., 421; *Hymes* v. *Esty,* 133 N. Y., 342, 31 N. E., 105; *Jordan* v. *Eve, Trustee,* 31 Grat. (Va.), 1; *Trice* v. *Kayton,* 84 Va., 217, 4 S. E., 377, 10 Am. St. Rep., 836; *Patton* v. *Quarrier, Trustee,* 18 W. Va., 447; *Barre* v. *Fleming,* 29 W. Va., 314, 1 S. E., 731; *Desvergers* v. *Willis,* 56 Ga., 516, 21 Am. Rep., 289; *Haldane* v. *Sweet,* 55 Mich., 196, 20 N. W., 902. The ground on which these cases rest is that when the road is a public one, actually open, and in use, the parties must be presumed to have taken it into account in fixing the price of the land, and therefore the covenant must be con-

strued as not intended to embrace the easement. The same rule is followed in some other States as to other open and visible easements. In *Kutz* v. *McCune,* 22 Wis., 628, 99 Am. Des., 85, it appears that the easement held not to be an incumbrance was the right to overflow the land with a millpond; the overflow being, of course, open and visible. The court said that this was equally as obvious as a public road, and that, in case of a public road, the doctrine did not rest on the fact that the road was in favor of the public, but that the easement was obvious and notorious in its character, and therefore the purchaser must be presumed to have seen it, and to have fixed his price for the land with reference to the situation as thus presented. The same rule was followed in *Bennett* v. *Booth,* 70 W. Va., 264, 73 S. E., 909, 39 L. R. A. (N. S.), 618; the easement complained of there being the right to overflow by a milldam (*Ireton* v. *Thomas,* 84 Kan., 70, 113 Pac., 306, 32 L. R. A. [N. S.], 313), a levee, covering several acres (*Schurger* v. *Moorman,* 20 Idaho, 97, 117 Pac., 122, 36 L. R. A. [N. S.], 313, Ann. Cas., 1912D, 1114), an irrigation ditch (*Jones* v. *Jenkins,* 34 Md., 1, 6 Am. Rep., 300), the right to the use of open windows looking across a lot which the vendor of the latter had retained, at which time the windows were obvious. Public roads are excluded in some other States, not on the ground that their existence is open and obvious, but because the court judicially knows that they are necessary, and hence useful. *Harrison* v. *Des Moines & Ft. D. R. Co.,* 91 Iowa, 114, 58 N. W., 1081;

*Killen* v. *Funk,* 83 Neb., 622, 120 N. W., 622, 131 Am.
St. Rep., 658; *Sandum* v. *Johnson,* 122 Minn., 368, 142
N. W., 878, 48 L. R. A. (N. S.), 619, Ann. Cas., 1914D,
1007. The same reasoning was applied to the exist-
ence of a drainage ditch, in *Stuhr* v. *Butterfield,* 151
Iowa, 736, 130 N. W., 897, 36 L. R. A. (N. S.), 321;
and to a public sewer five feet under ground in *First
Unitarian Church* v. *Citizens Sav. & Tr. Co.* (Iowa),
142 N. W., 87, 51 L. R. A. (N. S.), 428. In the follow-
ing cases it is held that the existence of a railroad right
of way is an incumbrance, regardless of its open and
obvious character. *Pierce* v. *Houghton,* 122 Iowa, 477,
98 N. W., 306; *Beach* v. *Miller,* 51 Ill., 209, 2 Am. Rep.,
290; *Burk* v. *Hill,* 48 Ind., 52, 17 Am. Rep., 731; *Kel-
logg* v. *Malin,* 50 Mo., 496, 11 Am. Rep., 426; *Tuscogee
Land & Secur. Co.* v. *Birmingham Realty Co.,* 161 Ala.,
522, 49 South., 378, 23 L. R. A. (N. S.), 992. The Mis-
souri cases were followed to same effect in *Farrington*
v. *Tourtelott* (C. C.), 39 Fed., 738, as substantially
binding on the point, but which observations indicating
that the doctrine did not wholly meet the approval of
the court. *Pilcher* v. *Atchison R. R. Co.,* 38 Kan., 516,
16 Pac., 945, 5 Am. St. Rep., 770, is cited in the brief
before us, but there was no question of knowledge from
the obvious existence of the railroad discussed. *Pryor*
v. *Buffalo,* 197 N. Y., 123, 90 N. E., 423, is also cited, but
the facts in that case were such as to render it inappli-
cable to the point we now have under examination. The
covenant was of a very special character; and, while
it appeared that the covenantee had knowledge of the

existence of the railway on the ground contracted for, it was that very ground that had to be furnished by the city, and hence compliance with the covenant necessarily involved the removal of that railway and the delivery of the land to the covenantee. Still we do not doubt that from the reasoning of the New York cases on the subject of public roads, the doctrine applicable to that class of improvements would not be extended to railroads. On the other hand, it is held in the following cases that existing railways in actual operation stand on the same ground as to their public and obvious character as do public highways: *Van Ness* v. *Royal Phosphate Co.*, 60 Fla., 284, 53 South., 381, 30 L. R. A. (N. S.), 833, Ann. Cas., 1912C, 647; *Goodman* v. *Heilig*, 157 N. C., 6, 72 S. E., 866, 36 L. R. A. (N. S.), 1004; *Ex parte Alexander*, 122 N. C., 727, 30 S. E., 336. The same doctrine was substantially laid down in *Geren* v. *Caldarera*, 99 Ark., 260, 138 S. W., 335, but the case is put not only on the ground that the purchaser knew that the switch track was on the land, but also that it was shown that the track in question was a direct inducement to his purchase.

We have held that where an intending purchaser inspected the land which he proposed to buy, and saw upon it in operation a line of railway, he could not thereafter complain that the land was so incumbered, and recover therefor under his covenant against incumbrances. *Rich* v. *Scales*, 116 Tenn., 57, 66, 69, 91 S. W., 50, 52. In that case the court said:

Schwartz v. Black.

"But if a part of the land purporting to be conveyed by the deed be held in adverse possession at the time of the conveyance, and the vendee have knowledge of such adverse possession at the time he takes his conveyance, he can have no relief, either upon his covenants at law or in any form in equity; otherwise, if he have no knowledge of such adverse possession at the time." Id. 66.

Again:

"Treating the case really presented in the bill, an action on the covenants of the deed, upon the ground that a part of the land embraced within the calls was at the time of the conveyance held by an outstanding and better title, that of the railway company, two insuperable objections are apparent: Firstly, as already said, the representation by bounds would control that made by the calls for distance, and it follows that none of the land described was held by better title, and that the complainant obtained all that he had contracted for; secondly, assuming that the strip claimed in the bill really fell within all the descriptive words of the deed, still the complainant could not recover, because the strip was, when the conveyance was taken, then in the adverse possession of the railroad company in a manner open and obvious to the complainant, and under such circumstances he could assert no right either at law or in equity in respect thereof based upon the deed in question." 116 Tenn., 69, 91 S. W., 52.

131Tenn24

The reason is substantially the same as that which applies to the existence of public highways. *Perry* v. *Williamson* (Ch. App.), 47 S. W., 189.

In the case last cited it was held that the rule would not apply to the existence of a private way, when it did not appear that the purchaser had knowledge of the legal existence of such way.

Similarly, in the case now before us, it is insisted that although complainant inspected the premises before he made his purchase, and had an abstract of title, he was misled by defendant into believing that one of the railroads was paying rent for the use of the right of way. The evidence sustains this contention as to the Ryman track. That is to say, the owners of the Ryman track were paying rent for the right to use a certain part of the lot adjoining the track for loading and unloading, the sum of $8.33 per month. This was so stated to complainant as reasonably to lead him to believe that the rent was being paid for the use of the track, and hence that the track was subject to the control and disposal of the owner of the lot; and it seems that he did believe this, and actually demanded rent for it from the Ryman people a few months after his purchase, and after the time had expired for which the Ryman people had rented the space adjoining the track. The latter informed him of his mistake, referred him to the contract under which they had obtained the right of way, and refused longer to rent the space of ground they had previously used for the loading and unloading. Under these circum-

stances, we are of the opinion that the inference to be drawn from the open and obvious character of the Ryman track is rebutted, and that this track must be treated as an incumbrance; and although complainant is entitled to no substantial damages therefor, since the evidence shows that it was beneficial to the land, still he is entitled to nominal damages, and to the costs of the cause. *Wadhams* v. *Swan*, 109 Ill., 46. .

A decree will therefore be entered so modifying the decree of the chancellor as to adjudge that, although complainant is not entitled to any substantial damages, he is entitled to nominal damages, and to the costs of the cause.